SATER v. SATER.

1. WILLS—CONSTRUCTION.
    Contention that bequest of testator's home, owned by him at his death, together with all of the household furniture and effects to his daughter, "a life interest to belong to her and her heirs forever," was repugnant and that his intent could not be determined *held*, without merit, where it is plain testator intended to leave something to the daughter and defendant admits she was given a life estate.

2. SAME—CONSTRUCTION—AMBIGUITY—EXTRINSIC TESTIMONY.
    Courts look to all four corners of will involved in construing obscure or uncertain language rendering it ambiguous and may also consider competent extrinsic testimony in the light of which the questioned provision may be construed to determine its true intent.

3. SAME—CONSTRUCTION—INTENT TO VEST ABSOLUTE OWNERSHIP IN DEVISEE.
    Provision of will bequeathing testator's home "together with all of the household furniture and effects, to my daughter, * * * a life interest to belong to her and to her heirs forever" is construed as intending to give her the same interest in the realty as the personalty, the absolute ownership rather than only a life interest, especially in view of residuary clause explaining why testator gave defendant son less than the daughter.

4. SAME—CONSTRUCTION—DESCENT AND DISTRIBUTION.
    Rule that will should be construed as nearly as possible in conformity with the law of descent and distribution in cases of ambiguity is not a fixed rule which is absolutely control-

REFERENCES FOR POINTS IN HEADNOTES

[1, 5, 6] 19 Am Jur, Estates, § 22; 33 Am Jur, Life Estates, Remainders, and Reversions, § 11; 57 Am Jur, Wills, § 1319.
[2] 57 Am Jur, Wills, §§ 1042–1044, 1129.
[2] Admissibility of extrinsic evidence to aid interpretation of will. 94 ALR 26.
[4] 57 Am Jur, Wills, § 1125.
[6] 57 Am Jur, Wills, §§ 1158, 1159.

ling but is only one of several rules to aid in construction of an ambiguous testamentary document.

5. SAME—CONSTRUCTION—ABSOLUTE TITLE.
   Provision of will which gave testator's home to devisee daughter "a life interest to belong to her and to her heirs forever" is construed as giving the home to her absolutely inasmuch as testator failed to name the taker of the fee title subject to the life estate.

6. SAME—CONSTRUCTION—INTENT.
   A testamentary devise of land is construed as conveying all the estate the devisor could lawfully devise unless it clearly appears that he intended to convey a less estate (CL 1948, § 702.2).

Appeal from Ingham; Salmon (Marvin J.), J. Submitted January 11, 1951. (Docket No. 44, Calendar No. 44,928.)   Decided March 1, 1951.

Bill by Esther M. S. Sater, individually and as executrix of the will of August P. Sater, deceased, against Petrus E. C. Sater and another to construe the will. Decree for plaintiff. Defendants appeal. Affirmed.

*Pierce, Planck & Ramsey,* for plaintiff.

*Van Winkle & Van Winkle,* for defendants.

NORTH, J. Plaintiff filed this bill in chancery to obtain a construction of the last will and testament of her father, August P. Sater, deceased. She contends that by its terms she became the absolute owner of the property described in paragraph 2 of the will. On the other hand, as to that property, defendants, a son and grandson of testator, assert in their answer "that paragraph 2 of said last will and testament expressly gives to Esther M. S. Sater a life interest in the lands and   *   *   *   in the household furniture and effects as therein set out," and

that subject to her life interest this property "passes under the residuary clause of said last will and testament." The decree in the circuit court construed the will as claimed by plaintiff. Defendants have appealed. Paragraph 2 of the will reads:

"I give, devise and bequeath my home, located on Lot Number Seventy (70) of College Grove Addition to the City of East Lansing, Michigan, according to the recorded plat thereof, or the home owned by me at the time of my death, together with all of the household furniture and effects, to my daughter, Esther M. S. Sater, a life interest to belong to her and to her heirs forever."

It is too plain for argument that the testator intended by his will to leave something to his daughter, Esther; and we find no merit in an alternative contention made by defendants "that the provisions of paragraph 2 of the will are totally and irreconcilably repugnant and the testator's intent cannot be determined," and therefore paragraph 2 of the will is void. Especially must it be so held in view of defendants' admission quoted above from their answer that paragraph 2 "expressly gives to Esther M. S. Sater a life interest." Hence the controverted issue narrows down to this: Does paragraph 2 give to Esther full and complete title to the property described therein, or only a life estate?

In construing a testamentary provision expressed in obscure or uncertain language, rendering it ambiguous, courts look to "all four corners" of the will involved, and may also consider competent extrinsic testimony in the light of which the testamentary provision may be properly construed. *In re Warmbier's Estate,* 262 Mich 160; *Tonnelier* v. *Westin,* 302 Mich 213.

This will was copied from an original draft in the handwriting of testator, who, at the time it was typed

at his request, stated it "was just the way he would like to have the will read." Obviously paragraph 2 is ambiguous. Hence it was proper to take extrinsic testimony to aid in determining the true intent of the testator. *In re Warmbier's Estate, supra.* Rev. John E. Breck, pastor of the church which the testator attended, was the only witness on this phase of the case. He testified (over defendants' objection) that on 2 occasions when he was visiting with testator the latter made statements concerning his will. The will was executed January 31, 1944. The first of the 2 conversations with Rev. Breck occurred February 21, 1946, and the second about 6 months later. The material portions of his testimony are as follows:

"In Mr. Sater's conversation, he was disturbed over the possibility that after his death Miss Sater might try to sell the house and Mr. Sater asked me to use all the influence I had to keep her from selling the house. Mr. Sater told me that in his will he had left everything to Esther. That is an exact quotation. He also said he wanted me to use my good offices to persuade her not to dispose of the property. He gave as his reasons for wanting her to keep it that he felt the property being an income property (double house) would protect her for the rest of her days. He told me specifically at that time that he came to see me to try to prevent Miss Sater from ever selling the house. * * *

"I talked with Mr. Sater in his home at a later date probably within 6 months after the first conversation. At that time he said he was worried over the possibility that Esther would try to sell the house and asked me to use my influence to prevent her from trying to sell it. He said that he thought she might go to some old people's home.

On cross-examination he also testified:

"This first conversation occurred in my study at the church premises. Mr. Sater told me he had left

everything to Esther. I was not familiar with the will.

"I did not learn from the conversation with him at that time that Rev. Sater had left a legacy to his grandson. I did not know or learn from my conversation with him at that time that he had a provision in his will relative to an indebtednes due to Hulda Larson of Boston, Mass. * * * He did repeat that he had left everything to Esther, but said nothing about the other things in his will."

The provisions in the will about which nothing was said to Rev. Breck by testator were: (1) A conditional provision for paying $900 to Hulda Larson from whom, testator recited, he had borrowed that amount; (2) a $500 bequest in trust to Esther to be paid to testator's grandson, Alden A. P. Sater, when he became 21 years of age; and (3) the residuary clause in the will under which any residue was left to his "two children, Esther M. S. Sater and Petrus E. C. Sater, equally."

If only the wording of paragraph 2 of the will were to be considered, as between giving Esther absolute ownership or only a life estate in the property therein described, the inference at first blush might seem to support either claim substantially equally. But, while it is possible, it rarely happens that a testator in bequeathing to a child "household furniture and effects" in the home, gives to the child only a life estate in such personal effects. As embodied in this will it seems quite necessary to conclude that the testator intended to give his daughter, Esther, the same interest in the real property as in the household effects. The briefs of all parties to this litigation seem to proceed on that theory. Hence the more plausible inference is that by paragraph 2 testator intended to give to Esther absolute ownership rather than only a life interest. "A will must be construed as a whole." *Hay* v. *Hay* (syllabus), 317 Mich 370.

If we look to the residuary clause of this will, the inference there appears rather clearly that testator did not intend that his son, Petrus E. C. Sater, should presently take any interest in the property described in paragraph 2, for in the residuary clause the father provided: "I am making no further provision (than hereinbefore stated) for my son because I have already helped him in a financial way."

And again if we look to the residuary clause it is difficult to conclude that testator's daughter would receive any substantial personal benefit under the residuary clause in the property designated in paragraph 2, if under the will the absolute ownership thereto did not pass until termination of the daughter's life estate—*i.e.*, upon her decease; for as a result of her demise she would take nothing under the residuary provision which would be of personal benefit to her. Such a holding would not harmonize with the testator's apparent primary concern, which seemed to be the welfare of Esther during her lifetime.

In arriving at our decision we have not overlooked defendants' contention that in cases of ambiguity as to disposition of property a will should be construed as nearly as possible in conformity with the law of descent and distribution. *Detroit Trust Co.* v. *Stoepel,* 312 Mich 172. However this is merely one of several rules announced by this Court to aid in construction of an ambiguous testamentary document. It is not a fixed rule which is absolutely controlling.

We have also considered, but are not in accord with, appellants' contention that the Sater will should be construed as vesting only a life estate in Esther because such a construction would aid in accomplishing the testator's desire that she should not dispose of the property during her lifetime. Had the testator intended to accomplish that result, it

seems rather clear that one of his intelligence in very definite language would have given Esther only a life estate and would have specifically named the taker of the fee title subject to the life estate. That was not done in this will.

It may further be noted, we think our decision herein is in accord with the statute, insofar as it may be considered applicable, which provides:

"Every devise of land, in any will hereafter made, shall be construed to convey all the estate of the devisor therein which he could lawfully devise, unless it shall clearly appear by the will that the devisor intended to convey a less estate." CL 1948, § 702.2 [Stat Ann 1943 Rev § 27.3178(72)].

See *Weir* v. *Michigan Stove Co.,* 44 Mich 506.

On the record before us we conclude the trial judge reached the right conclusion. The decree entered in the circuit court, wherein it is provided that under the terms of the Sater will the entire title of the real estate and personal property described in paragraph 2 of the will vested in Esther M. S. Sater, is affirmed. Appellee may have costs of this Court.

REID, C. J., and BOYLES, DETHMERS, BUTZEL, CARR, BUSHNELL, and SHARPE, JJ., concurred.