# WILL OF WALTER.

*November 3 — December 1, 1885.*

**WILL** *written in language which testator did not understand.*

A will drawn in accordance with the instructions of a person of sound mind, and executed by him in due form of law, with full and accurate knowledge of its contents, is valid, although it is written in the English language and the testator did not understand that language.

APPEAL from the Circuit Court for *Sheboygan* County. An instrument in writing purporting to be the last will and testament of Minna Walter, late of the county of Sheboygan, deceased, was presented for probate to the county court of that county by *George V. Whiffen*, the executor therein named, and was admitted to probate by that court. The instrument is written in the English language.

At the time of her death the estate of the testatrix con-

sisted of her wearing apparel, some bedding, and about $1,000 in choses in action. It does not appear that she had any other property at her death. In her will she bequeathed her wearing apparel to Sarah Bolt, her neighbor, and the residue of her property to one Herman Millert, who, when the will was executed, was about eighteen years of age, and with whom the testatrix lived. Neither of the legatees were relatives of the testatrix. She left surviving her three brothers residing in Wisconsin, and sisters and descendants of sisters residing in Germany. These were her nearest of kin.

The brothers of the testatrix, *Frederick, Martin,* and *Christian Schultz,* appealed to the circuit court from the order of the county court admitting such instrument to probate as the last will and testament of their deceased sister. The issue *devisavit vel non* was tried by the court, and resulted in the following findings of fact:

"(1) That said Minna Walter died on the 6th day of February, 1884, at the town of Sheboygan Falls, in Sheboygan county, and an inhabitant of said county. (2) That the instrument propounded as the will of said deceased was, on the 23d day of November, 1881, signed by said Minna Walter by affixing her mark thereto in the presence of three witnesses, who subscribed the same, and her name was therein signed by Francis Williams in her presence and by her express direction. (3) That said will was written in the English language at the request and according to the directions of said Minna Walter, and she was a German and did not understand the English language; but said Minna Walter fully stated to Francis Williams, who draughted said instrument, through an interpreter who understood both languages, the objects and bequests therein written; and after said instrument was written it was read over to her, and explained in German by said interpreter; and said instrument fully expressed her purposes as there declared.

(4) That said Minna Walter was at all said times of sound mind, memory, and understanding, and of lawful age and under no constraint. (5) That said instrument so propounded for probate was by said Minna Walter then and there, in the presence of three subscribing witnesses, declared as her will; and said witnesses, at her request, and in her presence and the presence of each other, subscribed the said instrument under the attestation clause as subscribing witnesses, and said witnesses were competent thereto."

From the facts thus found the court determined that the instrument in question is the last will and testament of the deceased, and that the same was duly and legally executed. Judgment was thereupon entered affirming the order of the county court so admitting the instrument to probate. From that judgment the same three brothers of the testatrix have appealed to this court.

*Conrad Krez,* for the appellants.

*Wm. H. Seaman,* for the respondent.

LYON, J. The learned counsel for the appellants challenges the accuracy of each and every finding of fact except the first, which states the residence of the testatrix and the date of her death, and that portion of the third which finds she was a German and did not understand the English language. He argues with much ingenuity that the testimony fails to prove any of the propositions of fact thus challenged. After an attentive perusal of the testimony we find ourselves unable to agree with counsel. We think that every fact essential to the validity of the will was established by a fair preponderance of the testimony; or, at least, that there was no such clear preponderance of testimony against any material finding of fact as will authorize this court to set it aside. We do not deem it necessary, in this opinion, to set out the testimony or discuss it

at length.    The statement of our conclusions therefrom must suffice.

Aside from the finding that the testatrix did not understand the language in which her alleged will was written, it cannot be doubted that the other findings of fact fully justify the admitting of the instrument to probate as her last will and testament.    We are thus brought to consider the only question of law presented by this appeal, to wit: Should an instrument executed with all the formalities which the law makes essential to a valid execution of a will, which purports to be the last will and testament of the deceased person so executing it, and which expresses his will and intentions, be denied probate for the sole reason that such person did not understand the language in which the instrument was written?

This is an interesting and, perhaps, an important question. It has not heretofore been raised in this court to our knowledge, and the industry of counsel has failed to find a direct adjudication of the question elsewhere.    However, in Redfield on Wills, to the statement in the text that "it seems to be well settled that the testator may put his will in any language he may choose," there is a note in which the author says: "We doubt if the common law will allow of a written will being expressed in a language not understood by the testator.    That would seem indispensable to any understanding execution of the instrument."    Vol. 1, p. 166 (4th ed.), note 8.    No case or authority is cited to support the opinion intimated in the last extract.    The reason given for this opinion is, in effect, that a person cannot have an understanding of the contents of an instrument unless it be written in a language he knows.    True, he may not get such understanding by reading the instrument himself, but there are other methods by which he can be accurately informed thereof, although he may not be able to read understand-

ingly a word of the instrument. A vast amount of accurate knowledge is alone imparted to the mass of mankind by means of translations from languages understood by but few. Such is the foundation of our belief in very many most important accepted truths in theology, science, and history. Important writings are frequently signed without perusal, the signer relying upon the statement of another who knows what the instrument contains, as to its contents. If the informant states such contents truly, the signer knows just what he has signed. Were an issue made up as to whether the signer of a written instrument knew its contents when he signed it, and the proofs should show that he never read it, but was accurately informed of its contents orally, before he signed it, by a person who had read it, the issue would necessarily be found in the affirmative — that is, that the signer knew the contents of the instrument.

There can be no doubt, we think, that a person who signs an obligation or promise, with knowledge of its contents, imparted to him by parol, is liable thereon, although it may be written in a language he does not understand. The question is not by what means or instrumentalities the signer was informed of the contents of the instrument, but did he know its contents when he signed it.

No good reason is perceived why this is not also true of wills. Of course it is essential to a valid will that the testator should have had an intelligent understanding and comprehension of its contents when he executed it. The formalities required by law in the execution of wills are prescribed for the purpose (among others) of preserving satisfactory evidence that the testator in each case had such understanding of the contents of his will. But the law does not require that he shall read his will before execution, or be able to read it, as a condition to its validity. If such were the law, the blind, or those persons who from

illiteracy or other cause are unable to read, could never make a valid written testament. The same would be true of many persons who may desire to execute a written will when *in extremis*, and who are otherwise competent to do so. It has long been held that persons thus circumstanced may execute valid written wills. And if the will of any such person is drawn in accordance with his instructions, although not read over to him, it seems now to be settled that, if otherwise sufficient, it is a valid will. 1 Redfield on Wills, p. 57, ch. 3, sec. 6, subd. 5.

We perceive no substantial difference in principle between the cases above referred to and one in which a will is drawn up in a language which the testator does not understand. In cases belonging to either class the court should require satisfactory proof that the testator was correctly informed of the contents of the instrument he was about to execute. Such proof was made in the present case, and in addition thereto it was proved that the instrument was drawn in strict compliance with the instructions of the testatrix in that behalf.

In view of the well-known fact that quite a large percentage of the people of this state do not understand the English language, and of the probability that many wills of such people, written in English, have been admitted to probate, we should adopt the rule here suggested, even though the argument against it were much stronger than it is. Otherwise great mischief might be done by defeating the real will of the testators, carefully expressed, and duly verified in the manner prescribed by statute, and by unsettling estates supposed to be settled, and divesting rights of property believed to be fully vested. If the same circumstances had existed generally in this country when Judge REDFIELD wrote the intimation above mentioned, we greatly doubt whether he would have thought that the rule there

suggested (even conceding it to be a rule of the common law) was at all applicable to the condition and circumstances of our people.

Our conclusion is that, because the instrument in question was freely executed by the testatrix in due form of law, with full and accurate knowledge of its contents and in accordance with her instructions (she being of sound mind), it was properly admitted to probate and established as her last will and testament, notwithstanding it was written in the English language, which she could not read or understand.

*By the Court.*— The judgment of the circuit court is affirmed.