WILL OF ARNESON: QUALE, Respondent, vs. WHITE, Guardian *ad litem,* Appellant.

*March 22—April 17, 1906.*

*Wills: Language not understood by testator: Formal execution: Presumption from certificate: Presence of testator: Undue influence: Presumption: Findings: Review: Costs on appeal.*

1. The fact that a will was written in a language which the testator did not understand does not render it invalid where, before executing it, he was accurately informed of its contents and meaning in a language which he did understand.

2. When it is established that testator affixed his signature to the instrument and that the persons whose names appear as subscribing witnesses signed a certificate which declares all the steps required for due execution, there arises a strong presumption that such steps were taken; and such presumption need not be supported by affirmative memory of witnesses, but, to defeat the will, must be overcome by evidence to the contrary.

3. Such presumption is not overcome by evidence that, after the testator had expressed his desire to execute the instrument and he and the first witness had signed, the latter, within hearing of the testator, directed the second witness to sign, which she did in the same room, although the testator's eyesight was so dim that he did not actually see the act of writing.

4. Where the trial court found as a fact that the evidence did not show such a situation as would give rise to a presumption of undue influence so as to throw the burden upon the proponent to show that none was exerted, and there is nothing to indicate that the rule of law in respect thereto was ignored or misapplied, such finding will not be disturbed unless contrary to the clear preponderance of the evidence.

5. Upon affirmance of a judgment of the circuit court which affirmed a decision of the county court admitting a will to probate, the respondent is awarded costs, it being held that the guardian *ad litem* of appellants should have been convinced by the concurring decisions of the lower courts that there was no such doubtful question or probability of a different result in this court as to make it his duty to appeal.

APPEAL from a judgment of the circuit court for Pierce county: E. W. HELMS, Circuit Judge. *Affirmed.*

Ole Arneson, about eighty years old, and his wife two years younger, had emigrated to this country in 1869, and for about fourteen years before his death had lived in the village of Martell, Pierce county, Wisconsin, where they maintained ordinary neighborly acquaintance with the residuary legatee, *Quale.* Mrs. Arneson was taken seriously ill and the couple came to *Quale's* house at his request. Mrs. Arneson died at the end of about ten days after the removal. The testator remained there until his death in April following. He was feeble and mainly confined to his bed, although not wholly disabled from moving about. He had no relatives in this country, and, so far as appears, had no communications in late years with relatives left in Norway, who were nephews and nieces ranging in age from six years upward. Some time about November 27, 1903, Arneson had a visit from the pastor of his church and stated to him his wish to make a will and to leave his property to *Mr. Quale.* The pastor urged that, if he had no desire to remember his relatives, he ought to leave half of his estate either to the church or to some charity. To this suggestion he demurred strenuously, but, according to the evidence, after some urgency, said "I suppose I have to do it;" whereupon *Quale* interposed and said "No, you don't have to do it. A will isn't good for anything unless it is made by your own free will." The pastor left expecting to return in a few days and draw a will, he believing that it would be on the general lines already suggested. On the following day *Quale* attempted to procure the presence of a lawyer, Mr. Thompson, residing at Ellsworth, to draw a will; he being unable to attend asked *Mr. Quale* to give him the information necessary so that he could draw the will at his office. This was done and he wrote the will in question, which provided (1) for payment of debts and charge for tombstone; (2) gift of all residue and remainder to *Thomas N. Quale,*

proponent, whom he appointed executor and required to furnish a proper and described funeral and to erect a suitable tombstone of the value of from $75 to $100 between the graves of testator and his wife. On the day after this paper was written, a neighboring merchant, Forseth, an old acquaintance of deceased, was called to the house. He found the testator in bed, and was handed the draft of the will by *Quale*. Forseth then asked the testator if he wished the will read, and, upon affirmative answer, read it to him, translating from the English in which it was written to Norwegian, which alone Mr. Arneson understood. Having done this, he asked testator if that was the way he wanted it and if he wanted to sign it, to which the latter replied "Yes," but he could not write, and wished Mr. Forseth to sign for him. That was done, the testator touching the pen to make the mark. Forseth then signed as a witness and said to Mrs. Hagestead, an inmate of *Quale's* home, that she should sign it as a witness, and indicated the place. She did so in the room near the foot of the bed. There was some evidence that testator's eyesight was very feeble so that it was doubtful whether he could see what was being done across the room. Testator at the time of executing the will declared in response to an inquiry from *Quale* that the latter had made no request of him to make this bequest. The estate was about $1,700, all personal. Forseth explained to testator that the will would have no effect until his death, and that at any time he could have it destroyed and make another. Thereupon the will, at the request of testator, was handed to proponent *Quale*.

The contest was made by one *F. M. White,* appointed guardian *ad litem* of minor heirs, four in number, nephews and nieces of testator, resident in Norway. The will was admitted to probate in county court, the guardian *ad litem* appealed, and upon a trial in circuit court with a jury the jury found Arneson not of sufficient mental capacity to make a will, but that the will was not made through undue influence

exercised by or on behalf of *Quale*. The court made findings to the effect that Arneson was mentally competent, that there was no undue influence, and that the will was executed and witnessed in accordance with law, and entered judgment affirming the order of the county court, from which judgment the contestants by their guardian *ad litem* appeal.

*F. M. White,* as guardian *ad litem,* appellant, *in persona,* to the point that the burden was upon the proponent, under the circumstances shown, to prove that there was no undue influence, cited *Disch v. Timm,* 101 Wis. 179, 191; *Davis v. Dean,* 66 Wis. 100, 110, 111; *Will of Slinger,* 72 Wis. 22, 35; *Doyle v. Welch,* 100 Wis. 24; *In re Wheeler's Will,* 25 N. Y. Supp. 313; *Baker v. Baker,* 102 Wis. 226, 231; *In re Welsh,* 1 Redf. Sur. 238; *Weston v. Teufel,* 213 Ill. 294, 299, 72 N. E. 910, 911, and cases there cited; *Delafield v. Parish,* 25 N. Y. 9, 35–37; *In re Elster's Will,* 78 N. Y. Supp. 871, 874, 875; *In re Sickles' Will* (N. J.) 50 Atl. 577, 580.

*John E. Foley,* for the respondent.

DODGE, J. Upon the issues of fact we find no clear or overwhelming preponderance of evidence against the findings, which, therefore, conclude us unless it appear that error was committed by wrong application of rules of law.

It is urged that the will cannot be valid, couched as it was in the English language which the testator did not understand. Out of some contrariety of authority this court has decided that such fact is not an insuperable obstacle to the validity of a testament. *Will of Walter,* 64 Wis. 487, 25 N. W. 538. Of course in such a case it should appear clearly that the testator was otherwise accurately informed of the contents and meaning of the instrument in a language which he did understand, but that being established, as we consider to be the case here, there is no more doubt of his purpose and intention in executing it than if his knowledge of the contents

were derived from reading or hearing read a document written in a language which he did understand. How, otherwise, could parties who understood no common language become mutually bound to any written contract?

Appellant invokes the rule that proponent must show affirmatively that all the conditions required by the statute in the execution of the will were complied with, and contends that the oral evidence of the subscribing witnesses fails to establish any declaration by the testator of his purpose to execute a will or any request that the witnesses attest it or knowledge that it was being attested by Mrs. Hagestead. While the rule of law is, undoubtedly, as appellant contends, the oral testimony of those present is not all the evidence. When it is established that testator affixed his signature to the instrument and that the persons whose names appear as subscribing witnesses signed a certificate which declares all the steps required by the statute for due execution, there arises a strong presumption that such steps were taken, and such presumption need not be supported by affirmative memory of witnesses, but, to defeat the will, must be overcome by evidence to the contrary. *Gillmor's Will,* 117 Wis. 302, 94 N. W. 32. In this case the oral testimony tends to establish that the will, which is in full testamentary form, was fully and correctly explained to testator, that he was asked if it was as he wished it and if he desired to execute it, and that he responded in the affirmative, with a request that Mr. Forseth write testator's name. Whereupon Forseth aided testator in making his mark, affixed his own name as a witness, and said to the other witness within hearing of testator, "Mrs. Hagestead, you sign this," which she did in the same room, first remarking that the seat on the lounge was too low to write conveniently. We agree with the trial court that there was nothing in this state of the testimony to overcome the presumption above mentioned in favor of the assertions in the attestation clause to the effect that Arneson signed, sealed, published, and de-

clared the instrument as his will and that they subscribed as witnesses at his request and in his presence, although it might be believed that the testator's eyesight was so dim that he did not actually see the act of writing.

Appellant also invokes the rule that, under certain circumstances, although there is no direct proof of the exertion of undue influence, there will arise a presumption or inference to that effect so as to throw the burden upon the proponent to show that none was exerted. The more typical cases elucidating the application and limits of this doctrine are collected in *Vance v. Davis,* 118 Wis. 548, 95 N. W. 939. It is, however, rendered plain by the findings that the trial court was guilty of no mistake or oversight in this respect, and he finds as fact that the situation to arouse such a presumption was not established by the evidence. There being nothing to indicate that this rule of law was ignored or misapplied, we must abide by this finding of fact in the absence of any clear preponderance of evidence against it, which we have already declared.

We are persuaded that the concurring decisions of the two lower courts should have convinced the guardian *ad litem* of appellants that there was no such doubtful question or probability of a different result in this court as to make it his duty to appeal, and that respondent should recover costs in this court.

*By the Court.*—Judgment affirmed.

CASSODAY, C. J., took no part.