WILL OF ZYCH : GILL and others, Appellants, vs. RUK, Executrix, Respondent.*

*June 10—July 1, 1947.*

* Motion for rehearing denied, with $25 costs, on September 9, 1947.

110

For the appellants there was a brief by *Harvey & Harvey* of Racine, and oral argument by *Richard G. Harvey, Jr.*

For the respondent there was a brief by *Gerald T. Flynn,* and oral argument by *Mr. Flynn* and *Mr. Edward Kilmurry,* both of Racine.

BARLOW, J.   In opposing the admission of the will to probate appellants claim, (1) a person whose only communication with the testatrix is through an interpreter is not a competent witness to the will within the meaning of sec. 238.06, Stats., and (2) the will is the result of undue influence by Mary Ruk.

Sec. 238.06, Stats., provides a will shall be "in writing and signed by the testator or by some person in his presence and by his express direction, and attested and subscribed in the presence of the testator by two or more competent witnesses in the presence of each other."

Appellants argue that the only thing Greenquist is competent to testify to of his own knowledge is that he saw testatrix put a mark on a piece of paper which was in form a will; that he did not know whether testatrix was competent or coherent and does not know whether the will was clearly translated to her and was in fact her will or whether she voluntarily signed it.

In Wisconsin it is not necessary that the testator formally publish an instrument as his will.   1 Gary, Wisconsin Probate Law, p. 101, sec. 118.   Counsel relies on the reasoning of cases decided in states where the legislature decided as a matter of

public policy that the testator declare and publish the instrument to be his will at the time of its execution. When our legislature prescribed the manner of executing a will the question of the advisability of requiring the testator to declare and publish the will as such at the time of execution was not a new question, and undoubtedly the legislature gave full consideration to its advisability. It is probably the common practice of attorneys in Wisconsin to have the testator publish and declare the instrument to be his will at the time of its execution, but in construing sec. 238.06, Stats., this court held that a witness to a will need not know the nature of the instrument in order to be competent to sign as a witness. See *Allen v. Griffin* (1887), 69 Wis. 529, 35 N. W. 21; *Skinner v. American Bible Society* (1896), 92 Wis. 209, 65 N. W. 1037; *In re Noon's Will* (1902), 115 Wis. 299, 91 N. W. 670.

A will drawn in accordance with the instructions of testator, executed in due form of law, is valid even though written in a language not understood by testator where it is shown he had full and accurate knowledge of its contents. *Will of Walter* (1885), 64 Wis. 487, 25 N. W. 538; *Will of Arneson* (1906); 128 Wis. 112, 107 N. W. 21; *Quaratiello v. DiBiasi,* 43 R. I. 325, 112 Atl. 215; *Hauer v. Hauer,* 44 S. D. 375, 184 N. W. 1; 1 Page, Wills (2d ed.), p. 281, sec. 165.

It is not claimed that testatrix was of unsound mind or that she did not know the contents of the will at the time it was executed. The will was read and explained to her by a reliable person who spoke both the English and Polish languages. Appellants do not deny that testatrix signed this will in the presence of two attesting witnesses and that the attesting witnesses signed at her express direction and request, in her presence and in the presence of each other, but argue the attesting witnesses must know that the testatrix at the time of the execution of the will was of sound mental capacity in order to be competent witnesses. This is not the rule in Wisconsin. A

will may be sustained in opposition to positive testimony of one or more of the subscribing witnesses as to mental capacity if by the preponderance of the evidence from other witnesses proof is made that the testatrix was of sound mind and there was a valid execution of the will. *Will of Emerson* (1924), 183 Wis. 437, 198 N. W. 441. The attestation clause in itself creates a presumption in favor of due execution of the will which can only be overcome by clear and satisfactory evidence. *Will of Frederiksen* (1944), 246 Wis. 263, 16 N. W. (2d) 819. While it is helpful for an attesting witness to have knowledge of the mental capacity of the person executing a will, it is not necessary for him to have such knowledge in order to be competent to sign as a witness. The weight to be given to his testimony depends upon the facts upon which he arrived at his conclusion. Greenquist was competent to testify that the testatrix was of sound mind. He had two conferences with her, and had an opportunity to observe her during the time she was giving directions for the preparation of the will and at the time of its execution. It was for the court to determine how much weight it would give to this evidence. If he had testified he was unable to state whether or not she was competent at the time of the execution of the will he would still have been a competent witness to its execution.

On the question of undue influence appellants argue that the daughter Mary, who is the sole beneficiary, went to the home of Ziolkowski and requested him to see her mother; that she was at least in an adjoining room and able to hear all of the conversation; that she was present at the time the will was executed; and that the will is not a natural and just will. Undue influence is considered a species of fraud and must be established by clear, convincing, and satisfactory evidence by the contestants. *Will of Faulks* (1945), 246 Wis. 319, 344, 17 N. W. (2d) 423. Appellants in their brief say:

"Mrs. Zych [testatrix] was not insane or incompetent. It is true there is some testimony that she was childish at times,

but although she was not educated, there is no question but that she was normally a shrewd, thrifty and capable woman."

The evidence clearly establishes this to be true. There is nothing unusual about the beneficiary being in the home at the time testatrix discussed the contents of the will with a friend of the family in whom she had confidence. There is no evidence the daughter at any time took part in the conversation or made any suggestions relative to the will. The mother was ill, and the daughter went with her to the office of the attorney at the time the will was executed. She had been caring for her mother during this illness and there was nothing about the conduct of the daughter at the attorney's office that is even open to suspicion.

It is argued the will is not a natural and just will. The daughter had lived with her mother for more than twenty years and assisted her in maintaining a home. The other members of the family were well married and cared for. The testatrix told Ziolkowski and another friend that the reason for giving the property to the daughter was the fact that she needed it and the other children were well taken care of. The estate is not large, consisting almost entirely of the residence property which had been the home of this daughter for a period of years.

There is reference to the fact that the daughter misled her brother and sisters about the will after the death of the mother. She knew nothing about legal procedure and it was necessary to delay proof of the will until the witnesses could return from military service.

Without going into an extended discussion of all the claims made by appellants, it is sufficient to say that appellants fell far short of offering clear, convincing, and satisfactory evidence of undue influence, and the trial court is amply supported in its finding that there was no undue influence.

*By the Court.*—Order affirmed.