WILL OF COOPER: COOPER, Objector and Appellant, v. ZOLD, Proponent and Respondent.

*September 13—October 5, 1965.*

For the appellant there was a brief by *Melli, Smith & Shiels* of Madison, and oral argument by *Robert W. Smith.*

For the respondent there was a brief· by *La France, Thompson, Greenquist, Evans & Dye,* attorneys, and *Kenneth L. Greenquist* and *Adrian P. Schoone* of counsel, all of Racine, and oral argument by *Kenneth L. Greenquist.*

HALLOWS, J. The main issue is whether the court's failure to find undue influence on the part of the primary beneficiary was contrary to the great weight and clear preponderance of the credible evidence. A corollary issue is whether the trial court failed to recognize the inference of undue influence which the appellant claims was established as a matter of law by undisputed evidence. There are minor subsidiary issues which will be stated later.

The parties do not disagree on the basic law governing proof of undue influence or the scope of the appellate power in such cases. Undue influence, of course, as we have often said, must be proved by clear, satisfactory, and convincing evidence and a finding either way will not be upset on appeal unless it is against the great weight and clear preponderance of the evidence. It is also recognized the nature of undue influence is such that it usually rests either solely or to a large extent upon circumstantial evidence. For an explanation and discussion of these applicable rules, see *Will of Freitag* (1960), 9 Wis. (2d) 315, 101 N. W. (2d) 108; *Kuehn v. Kuehn* (1960), 11 Wis. (2d) 15, 104 N. W. (2d) 138; *Estate of Perssion* (1963), 20 Wis. (2d) 537, 123 N. W. (2d) 465.

Appellant contends undue influence was adequately proved under two theories of proof, *i. e.,* the four classical elements of opportunity to influence, disposition to influence, susceptibility, and coveted result, *Will of Freitag, supra,* and the confidential relationship between the testator and the beneficiary coupled with "suspicious circumstances," *Will of Faulks* (1945), 246 Wis. 319, 17 N. W. (2d) 423. As to the first method, appellant contends the findings of the trial court are contrary to the great weight and clear preponderance of the evidence and as to the second method, the court failed to make findings in accordance with the great weight and clear preponderance of the credible evidence.

The appellant's brief contains 28 pages of facts. We will only summarize the more salient points of the testimony which we reviewed as a whole to determine what is the great weight and clear preponderance of the evidence. In 1949 Cooper, who lived in Racine with his wife and son, was unemployed and with the financial help of his wife opened up a grocery store in a building which she owned with other persons. The appellant was married in 1950 and lived in the Racine area until his mother's death in 1956. There was a cordial relationship between the two Cooper families. Upon his mother's death, at the request of Cooper the appellant moved into his father's home under a sharing-of-expense arrangement, an arrangement which lasted some six years. There is testimony this arrangement, while workable, was not entirely satisfactory and Cooper and his daughter-in-law were not on the best of terms. There is also testimony that Cooper was stubborn, self-willed, and not easily influenced and was also domineering and demanding. Following Mrs. Cooper's death the testator's health and personality suffered. He was bitter about his wife's death and took less interest in the store.

In 1962 the appellant's wife became pregnant and her ill-health was of concern; so much so, her mother and step-

father came from Arizona to Racine to help her with her household duties. After the birth of a child in early December, the appellant made plans to leave his father's home because it was too crowded for his family and because the doctor had suggested a warmer climate for his wife's health. About this time Cooper's health suffered a setback and he was hospitalized with leukemia. The appellant understood the nature of this disease. Cooper's health improved after some transfusions and by the middle of January he was back home getting ready to reopen his store. About this time he became repetitious and vague about many things and rambled on about the past and sometimes forgot events which had just occurred.

On January 18th the appellant and his family left with his in-laws for Arizona, there to stay. The parting with Cooper was cordial. Cooper planned to rent the house and to move and live alone in the store building and had applied for social security. Birthday cards were exchanged between the appellant and his father in February. In early April Cooper reopened the store and rented his house. However, his health again deteriorated and toward the end of April he closed his store. From then on his condition grew worse and he was hospitalized on May 6th and remained there until his death on May 23d. The appellant first learned about May 10th or 12th that his father had been hospitalized. At the time the appellant was staying with his in-laws in Arizona and was planning to go to California to secure a job. Mrs. Zold and Mrs. Kuhnwald attempted to reach the appellant by phone and talked to his mother-in-law. These calls were made at the request of Cooper. Although requested to return the calls, the appellant did not and did not otherwise communicate with his father. On May 22d while in California, he received a telephone call from Mrs. Zold advising him his father was seriously ill and on the following day that his father had died.

Mrs. Zold, aged forty-seven, lived across from the Cooper store, was married and the mother of two children. Her husband was an unemployed invalid for some thirteen years, and from December, 1962, was receiving social security. Mrs. Zold worked all her married life at various jobs, the latter thirteen years as a cleaning lady for various doctors and lawyers. Mrs. Zold knew Cooper casually in 1949, became a customer of his store and did cleaning on two or three occasions at the Cooper residence prior to Mrs. Cooper's death. After Mrs. Cooper's death Mrs. Zold had contacts with Cooper such as visiting at the Cooper home, having Cooper go with her family on a vacation, and stopping at the store. During the two years prior to Cooper's death Mrs. Zold had occasion to make bank deposits for him, and spent more time with him at the store in a social manner. Commencing with the testator's hospitalization in December, 1962, Mrs. Zold saw testator often and visited him once or twice a day at the hospital, waited on him, ran errands for him, and brought him home from the hospital. She continued to see the testator at least once a day after his return home and generally took care of him. She entered the home without knocking, took him to the doctor for a blood test on a weekly basis, and would get his prescriptions filled.

At the end of April Mrs. Zold took testator daily to the hospital to receive X-ray therapy and about this time contacted George Simanek, an attorney, to make a will for the testator. Mr. Simanek had previously represented Mrs. Zold and she was employed by him as a cleaning lady. Mrs. Zold contacted Mr. Simanek several times prior to the will's execution on May 10th. On May 6th she telephoned the attorney and gave him the instructions for drawing the will. On this morning Mrs. Zold had gone to the store about 9 o'clock, and found Mr. Cooper unable to go for a therapy treatment. She called Dr. Dorman who came and after an examination advised that Cooper be taken to the hospital.

Cooper did not desire to go and stated he knew he was going to die. Somehow she took Cooper to the city hall for blood tests and back to the store. The testimony shows Mrs. Zold then withdrew $3,500 from the testator's savings account, of which the testator gave her $1,000 to pay bills. After this transaction, Mrs. Zold took testator to the hospital. There is some vagueness and inconsistencies in the record concerning this money.

On May 10th the will was executed. Mr. Simanek went over the will with Cooper at the hospital and explained it. In response to the attorney's question whether the will was the way Cooper wanted it, Cooper stated he should not give his son anything because they never saw eye-to-eye and especially he disagreed with his daughter-in-law. The attorney volunteered to redraft the will but Cooper said the will as drawn was the way he wanted it. A power of attorney prepared by the attorney was also explained to Cooper. It was explained the document authorized Mrs. Zold to go to the bank and withdraw funds to pay bills and to generally manage his affairs. The documents were then properly executed. The testator told the attorney to keep the will and power of attorney until he wanted them. There is no question on this appeal that at the time the will was executed the testator was rational, sane, and in full possession of his mental faculties.

There was testimony from Dr. Dorman who treated Cooper that on April 26, 1963, Cooper told him his son and family had left him when he needed them most and blamed his son's wife. Cooper further stated he was going to disinherit his son and leave his money to another person who helped in the store. The doctor further testified Cooper up to May 20th was domineering and stubborn and had ordered Mrs. Zold around. Rev. Nathan Bartel who called on Cooper while he was hospitalized testified that about a week before

Cooper's death he mentioned he wished his son would visit him and that his son had left him in the lurch when he needed him most.

The trial court held that Mrs. Zold had ample opportunity to exercise undue influence upon Cooper to procure for herself an improper favor if she was so disposed. Thus we do not need to spend any time on this element of proof. The appellant complains the trial court did not properly analyze the element of coveted result because the trial court thought the unnaturalness of the will was explained. A will must not only on its face make an unnatural disposition, but the disposition must also be in fact unnatural to satisfy the test. The concept of coveted result includes obtaining for oneself or another a benefit such person would normally not receive and its reception is unjust to someone else. Evidence may make what appears to be an unnatural or unjust will a natural and plausible one. The evidence is sufficient to show that Cooper intended to disinherit his son for reasons which to him seemed justified, primarily because his son had left him during his terminal illness when he needed him most. There is no substantial evidence that Mrs. Zold turned Cooper away from his son and daughter-in-law. Nor is it unusual for a person in terminal illness to be generous to people who are kind and comforting to him. It was not unreasonable to make Mrs. Zold a beneficiary in generous repayment for her solicitude, comfort, and services when Cooper needed assistance in his personal and business affairs, services which appellant might have performed if he was so disposed.

The appellant draws the inference from the testimony that Mrs. Zold was a grasping woman disposed to exercise her influence for her own gain. The trial court viewed the evidence differently and drew the conclusion Mrs. Zold's actions were one of co-operation and friendliness and in response to the demands of Cooper. A friendship had grown

up between Cooper and Mrs. Zold to the point where the trial court thought Cooper could demand and expect help and comfort from Mrs. Zold.

The question of the willingness to pursue and the capacity to recognize and resist such pursuit are difficult questions because their determination lies in the realm of inferences. The trier of the facts must draw the inferences which to him must be required to be drawn by evidence which he considers clear, satisfactory, and convincing. The evidence without question shows Mrs. Zold influenced Cooper in some respects, but all people are motivated by the influence of others. The test of when influence becomes undue is when it becomes so strong it overpowers and compels the exercise of the will of the person subjected to it. The result accomplished must be the purpose of the one using the influence rather than the purpose of the donor, and when influence produces a result which is of a benefit to the person using the influence, either directly to himself or indirectly for the benefit of another or to the injustice of another, the influence is characterized as undue. Conversely, when the result is produced by influencing a freely exercised and competent judgment, it is not undue influence. *Estate of Perssion* (1963), 20 Wis. (2d) 537, 123 N. W. (2d) 465. While we might have difficulty in drawing the inference of the non-disposition of Mrs. Zold as strongly as the trial court did, we would nevertheless be faced with the problem of testator's ability to recognize and resist the undue influence.

The trial court found Cooper was not susceptible to undue influence by Mrs. Zold. It chose to believe the testimony that Cooper was strong-willed and not easily influenced and such characteristics persisted until a few days before his death. The sharp point of this element is whether Cooper's strong will and domineering characteristics so deteriorated after his wife's death and under the influence of Mrs. Zold that his will and judgment became susceptible to overpowering

influence of Mrs. Zold. The appellant points out Mrs. Zold was able to convince Cooper to do many things she thought he ought to do. The court chose to believe the testimony of the doctor which was specific on the point that Cooper was strong-willed and not easily influenced by Mrs. Zold up to a few days before his death.

Considering the evidence as a whole and including the disturbing element of Mrs. Zold's relation with Cooper in respect to the withdrawing of money from the bank and its unexplained disposition, we must nevertheless conclude the appellant's proof was not so clear, satisfactory, and convincing that in rejecting it the trial court did not make a finding against the great weight and clear preponderance of the evidence.

The appellant contends the trial court failed to recognize the inference of undue influence which arose because of the confidential relationship which existed between Mrs. Zold and Cooper and of her activities in procuring the drafting of the will of which she became a principal beneficiary. As we read the opinion of the trial court it was cognizant of the rule laid down in the *Will of Faulks, supra,* even to the point of paraphrasing part of its language. We agree with the appellant that upon the facts of this case an inference of undue influence arose which required rebutting evidence which at least balanced that of the appellant. But the basic question which must be determined from the evidence submitted is always whether "the free agency of the testator has been destroyed." *Will of Faulks, supra,* page 359.

Because the inference of undue influence which arises from a confidential relationship in which the person occupying such relationship toward the testator engages in procuring the drafting of the will and takes a benefit thereunder is the type of inference which is sufficient to sustain a finding of undue influence, the opposition has the burden of going forward with the evidence. *Estate of Ford* (1963), 19 Wis.

(2d) 436, 446, footnote 1, 120 N. W. (2d) 647. However, if rebutting testimony is introduced the inference still persists but a trier of the facts is not required to accept the inference but may reject it and accept the rebutting evidence. This is well explained in the *Estate of Barnes* (1961), 14 Wis. (2d) 643, 112 N. W. (2d) 142; *Schlichting v. Schlichting* (1961), 15 Wis. (2d) 147, 112 N. W. (2d) 149; *Estate of Spenner* (1962), 17 Wis. (2d) 645, 117 N. W. (2d) 641. We do not agree with the appellant the inference of undue influence was not rebutted and, therefore, the trial court was required to accept the inference of undue influence as a matter of law. One need not contradict the evidentiary facts giving rise to the inference but may introduce such facts as would permit the rejection of the inference of undue influence. We conclude that while the inference of undue influence persisted and could have been accepted by the court, the counter evidence was sufficient to justify the court in not accepting it.

In the order admitting the will to probate, costs were awarded in favor of the proponents and against the appellant-objector in the sum of $3,163.48. The attorneys for Mrs. Zold considered this an obvious error and taxed the costs including the attorney's fees against the estate under sec. 324.13, Stats. This section provides a court may in a will contest allow the proponent a reasonable attorney's fee to be paid out of the estate. For clarification of the record, the order should be modified so as to allow costs and attorney's fees to be taxed against the estate and not the appellant in the amount stated.

The appellant argues the trial court erroneously substituted executors and ordered the issuance of letters to the First National Bank & Trust Company of Racine. The order recites Mrs. Zold declined to act as executrix under the will. This objection was not raised in the trial court. Dehors the record the appellant's brief states no written declination or

petition was filed and the respondent's brief replies the record does not contain the declination or petition because such matter was not a part of the issues in the will contest. We must agree with the respondent that the matter is not properly before us on this appeal.

*By the Court.*—The order appealed from should be modified in accordance with this opinion and, as so modified, is affirmed; the respondents to have costs on appeal.