ESTATE OF STEFFKE: HOFFMANN and others, Appellants,
v. WISCONSIN VALLEY TRUST COMPANY and others,
Respondents.

*No. 154.   Argued September 9, 1970.—Decided October 6, 1970.*
(Also reported in 179 N. W. 2d 846.)

46

For the appellants there was a brief by *Kelley, Weber & Bolte* of Wausau, and oral argument by *Richard Bolte.*

For the respondents Wisconsin Valley Trust Company and others there was a brief by *Schmitt, Nienow, Nickel & Nolan* of Merrill, and oral argument by *Leonard F. Schmitt.*

For the respondent William F. Krueger there was a brief and oral argument by *William F. Krueger* of Wausau, guardian *ad litem in pro. per.*

HALLOWS, C. J.  Steffke was by many standards a wealthy and successful businessman. He married his first wife Dorothy in 1930. In January of 1959, she suffered a stroke which left her legally incompetent. Dorothy Steffke was a patient in St. Mary's Hospital in Wausau from 1959, to the spring of 1963. At that time she was moved to Florida by her husband and has since remained there. Her estate is estimated to be about a half million dollars.

Commencing in 1962, Mr. Steffke started seeing Priscilla Baker Lane. At that time she was married and worked at a local bank, of which Steffke was a director. The relationship was kept secret. Mrs. Lane had begun a divorce action against her husband in May, 1961, and again in April, 1962; but both actions were

followed by reconciliation. In 1963 Mrs. Lane and her husband entered into a voluntary property settlement and separation, and in June, 1966, she obtained a Mexican divorce from her first husband. This divorce was arranged by Steffke. Sometime in 1964, after Steffke had removed his wife to Florida, he obtained a Mexican divorce from her without providing for a property settlement. Their daughters opposed this and were substituted for their father as guardians of their mother. Steffke then commenced a divorce action in Marathon county the latter part of 1964 and in July of 1965 obtained a divorce which provided for a property settlement at the insistence of the daughters.

In late June of 1966, Steffke suffered a severe stroke and heart attack and was hospitalized for three months. Shortly after his discharge from the hospital in September of 1966 Steffke changed the beneficiary designation on $30,000 life insurance policies from his family to Priscilla Baker Lane. Four months later in January he executed his will and six months later in July, 1967, he married Priscilla Baker Lane.

It is vigorously argued by the daughters that Steffke after his heart attack was under the influence of Priscilla Lane and this illness so changed his personality that he was susceptible to her undue influence. It is contended that Priscilla Lane's alleged clandestine relationships with Steffke while she was married to Lane branded her as a person likely to have a disposition to unduly influence Steffke for her own benefit and to the detriment of the objectors and that the will is unnatural and shows a coveted result.

The four elements often stated as necessary to establish undue influence, namely, a coveted result, susceptibility of testator to undue influence, disposition to influence, and an opportunity to do so, are claimed to be amply sustained by clear, satisfactory, and convincing evidence, which is the burden of proof in undue-influence

cases. *Will of Freitag* (1960), 9 Wis. 2d 315, 101 N. W. 2d 108; *Will of Cooper* (1965), 28 Wis. 2d 391, 137 N. W. 2d 93; 16 Callaghan's Wis. Digest, *Undue Influence,* p. 804, sec. 1. The trial court found the proof insufficient, and a careful review of the record does not convince this court the trial court was in error in admitting the will to probate. No useful purpose would be served in detailing the pro and con evidence.

It might be admitted that Steffke's will, bequeathing practically all of his estate to his second wife and cutting off his two children, is on its face an unnatural will; but there is evidence Steffke showed a great bitterness toward at least one of his two daughters and considered that both of them were well taken care of by virtue of the assets he had given his first wife, some of which she had put in trust for their ultimate benefit and the balance they would inherit by her will.

As early as January, 1966, in a letter to the parents of Mrs. Lane and prior to marrying her, Steffke stated he had "no further financial or economic obligation" to his wife or to his children. A will unnatural on its face may by evidence be made a natural disposition. *Will of Cooper, supra.* Neither the cutting out of an heir or the giving of a share of an estate to an alleged influencer is ipso facto an unnatural disposition. *Estate of Knutson* (1957), 275 Wis. 380, 387, 82 N. W. 2d 196.

On the element of susceptibility the evidence is overwhelming that the testator was stubborn and strong-willed, not only before his heart attack in 1966 but thereafter. He characterized himself as a "Krauthead." One of the objectors testified her father was strong-willed and stubborn and that characteristic persisted to the time of his death. The attorney who assisted Steffke in the preparation of his will and numerous business associates testified he had a strong will and was opinionated and these characteristics continued after his illness and up to his death. There is very little testi-

mony that Steffke was susceptible of being unreasonably influenced excepting some medical testimony, which we will deal with later.

It is not necessary to delineate the testimony relating to the disposition of Priscilla Lane. It is quite true she had ample opportunity to influence Steffke; but this opportunity goes for naught if Steffke was impervious to such influence. In his letter to her parents, Steffke stated their daughter did not foster, promote or encourage his action to separate his life from his first wife "and turn my thoughts to myself and my future." This is not a case of a weak-willed man being opportuned by a strong-willed woman to make a deathbed will favoring her. The facts rather show a strong-willed, wealthy man who in his own conscience and by court order took care of his first wife and considered he had indirectly taken care of his children and then turned to himself with the desire and will to rebuild his life as he wished. He was heeding the warning, "It's later than you think." He knew his daughters had had a private detective spy on him and Priscilla Lane before their marriage and they did not approve of Mrs. Lane.

What other fathers would have done in this situation is not the test. A person has a right to dispose of his worldly goods as he wishes providing those are his wishes. All people are motivated and should have reasons to act, but in undue-influence cases the influence must be undue and overreaching of the testator's mind, causing him to act as the influencer intends. *See Estate of Perssion* (1963), 20 Wis. 2d 537, 123 N. W. 2d 465; *Will of Faulks* (1945), 246 Wis. 319, 17 N. W. 2d 423; *Estate of Elvers* (1970), ante, p. 17, 179 N. W. 2d 881.

It is argued a presumption of undue influence exists because Priscilla Lane was a draftsman of the will and a beneficiary. Mrs. Lane did not draft the will but merely typed it. The will was drafted and prepared jointly by Richard P. Tinkham, an attorney of Wausau,

and Mr. Steffke. No one else participated in these activities. The will was typed by Priscilla Lane at Steffke's request because he did not want the will to be typed in Mr. Tinkham's office. After the will was typed and before its execution, Mr. Tinkham read the will to Mr. Steffke and discussed it with him.

But it is also claimed Mrs. Lane stood in a confidential relationship to Steffke and such relationship, plus being a beneficiary, raise a presumption of undue influence. This contention is a misreading of the *Will of Cooper, supra,* and the *Will of Faulks, supra.* The basis for the undue influence presumption lies in the ease in which a confidant can dictate the contents and control or influence the drafting of such a will either as the draftsman or in procuring the drafting. There is no basis in the evidence to sustain the necessary confidential relationship which gives rise to the presumption. While Priscilla Lane at the time the will was executed stood in a personal relationship to Steffke, such relationship is not the basis for the presumption. If one is not the actual draftsman or the procurer of the drafting, the relationship must be such that the testator depends upon the advice of the confidant in relation to the subject matter of the will. A person may very well depend upon the judgment of another in social matters or in art or in science, but would not follow his advice in personal financial affairs. There is no evidence, direct or circumstantial, that Steffke sought or received any advice in his personal financial affairs from Priscilla Lane. We think he made his money without her help and he disposed of it without her aid.

The court admitted three documents relating to the intent of Steffke in making his will. The documents were not executed wills and it is argued they should not have been admitted. These documents were not admitted as prior testamentary instruments of the testator but as documents relating to intent. Exhibit 1 was the

first draft of the final will; Exhibit 2, part of what purports to be an old will of 1941, which was either used in the preparation of the 1965 will or the 1967 will. Exhibit 3 was a copy of the will and testament prepared in March of 1965 and was incomplete as part of it dealing with seven beneficiaries was missing. There is no question prior executed wills are admissible because they are material to show the testator's recognized intent. The fact that prior wills are executed gives some evidentiary trustworthiness. *Estate of Borzych* (1954), 267 Wis. 526, 66 N. W. 2d 164; *also Estate of Landauer* (1952), 261 Wis. 314, 52 N. W. 2d 890, 53 N. W. 2d 627; *Estate of Smith* (1953), 263 Wis. 441, 57 N. W. 2d 727. But the rule is not limited to prior executed wills. Other documents showing intent are admissible on the issue of intent if they are shown to be or identify as authentic representations of the intentions of the testator. For this purpose, a copy of a will so proved, although it is not proved the will was actually executed, is admissible in evidence. *Estate of Brzowsky* (1954), 267 Wis. 510, 66 N. W. 2d 145, 67 N. W. 2d 384.

Here, the first draft of the will was identified as such by the attorney who prepared it under instructions from the testator. It has a nexus or relationship to show the intent of the testator at that time and its relationship to the final will. Exhibit 2 contained the signature of Steffke on the margin of the pages which would indicate and validly identify the document as expressing his intent even though it could not be proved the original had been duly executed. Exhibit 3 had interlineations in Mr. Steffke's handwriting and there was testimony it was used in preparing Exhibit 1, the first draft of the will. We find no error in the admission of this evidence for whatever probative value such documents could command in view of the other evidence.

It is claimed the court erroneously limited expert hypothetical testimony and totally disregarded this testimony

in reaching its decision. At the trial Dr. Roisum was asked his opinion of the testator's mental condition and whether he was susceptible to influence. This hypothetical question was based on hospital records and the testimony of witnesses he had heard in court up to that time. While such a hypothetical question is admissible, its value is restricted to the facts upon which it is based. If all the facts ultimately found do not form the basis of the opinion, its value is seriously impaired if not destroyed. *Kreyer v. Farmers' Co-operative Lumber Co.* (1962), 18 Wis. 2d 67, 117 N. W. 2d 646. Here, Dr. Roisum heard only part of the testimony of Attorney Richard P. Tinkham and none of the testimony of the principal witnesses of the proponents as to the testator's mental characteristics after his illness. The doctor did not see the exhibits of the proponents which were later received in evidence and concerned the testator's mental condition and his public activities after his illness. The doctor did not see Steffke in his lifetime. He gave a general opinion to the effect the testator was more susceptible after his illness than before. "More susceptible" is a comparative term and not very probative of the susceptibility of a person who characterizes himself as a "Krauthead." In view of all the evidence, the trial court was not in error in giving little or no weight to the expert opinion in answer to the hypothetical question.

*By the Court.*—Order affirmed.