IN RE ESTATE OF MALNAR: MALNAR, Appellant, v.
STIMAC, Respondent.

*No. 511 (1974). Submitted on briefs October 2, 1975.—*
*Decided June 30, 1976.*
(Also reported in 243 N. W. 2d 435.)

For the appellant the cause was submitted on the brief of *Donald R. Hoerl* and *Hoerl & Connolly, S. C.* of Marshfield.

For the respondent the cause was submitted on the brief of *John D. Day* of Spencer; for the guardian ad litem for minors and unknown heirs, there was a brief by *Normal L. Saracoff* of Neillsville.

HEFFERNAN, J. This is an appeal from an order denying the petition of appellant-proponent and sole beneficiary, Genevieve Malnar, to admit a document dated July 30, 1973, to probate as the will of the deceased, Frances Malnar.

The trial court denied admission of the will to probate because (1) there was insufficient evidence that the deceased, Frances Malnar, understood the contents of the will when she executed it; and (2) the proponent, Genevieve Malnar, had failed to overcome the inference of undue influence arising from a confidential relationship between proponent and deceased and from suspicious circumstances surrounding the drafting and execution of the will. We affirm.

The deceased, Frances Malnar, was a seventy-four-year-old widow, suffering from advanced liver disease. At the time the will was executed, she was staying at the Marshfield Convalescent Center. Her deceased husband was the uncle of Emil Malnar, the proponent's husband. The proponent, Genevieve Malnar, is the daughter of Mary Miksha, a friend of Frances Malnar for over thirty years. Mary Miksha was not related to the testatrix, Frances Malnar.

Frances Malnar had no children. She did have one sister, who was living in Yugoslavia. This sister had

several children, all living in Yugoslavia. Frances also had two brothers who predeceased her, both of whom were survived by children. The majority of the nieces and nephews lived in Illinois. There was testimony that Frances and the nieces and nephews were on good terms and that they corresponded with one another several times yearly. Several of the nieces and nephews would occasionally visit Frances, and Frances would occasionally visit them. Frances would send gifts to her nieces and nephews on birthdays and Christmas.

There was testimony that Frances Malnar was a strong-willed woman, who wanted to control her own affairs. At the time that the will was executed, however, she was a very sick and very weak individual. She was able to speak little English, but could write her name. Her native language was Croatian.

Frances owned a home in Greenwood, Wisconsin. In 1970, she was hospitalized at St. Joseph's Hospital in Marshfield for about two weeks as a result of a liver condition. When she returned to her home in Greenwood, she was weak and had problems maintaining her household.

In July 1971, Frances Malnar executed a will in which she left most of her estate to her living nieces and nephews. One of the nephews, Ralph Stimac, was appointed as the executor of the will. A sum of $100 was devised and bequeathed to St. Mary's Catholic Church of Greenwood, to be used for masses for the repose of her soul and that of her previously deceased husband, Jack Malnar. The document was drafted by her attorney, Clarence Gorsegner.

In March of 1972, Frances Malnar was again hospitalized for two weeks as a result of gastrointestinal bleeding caused by her liver disease. The bleeding was controlled, and she was released from the hospital. Her doctor felt that she should not return home but should

enter a nursing home. Genevieve Malnar, the proponent of the 1973 will—the will in question—arranged for her to enter the Havenet Nursing Home in Owen, Wisconsin. Frances stayed one week, but returned home because she did not like the surroundings at the nursing home.

After Frances Malnar returned home, Genevieve, who also lived in Greenwood, helped her buy groceries, drove her to the bank in Marshfield and to her doctor appointments, assisted her in taking certain medications, and visited her two or three times a month. In addition, Genevieve talked to her on the telephone almost daily.

In July 1972, Frances Malnar gave Genevieve Malnar a power of attorney. The document was drafted by Attorney Clarence Gorsegner, who had drafted the will executed by Frances in July 1971. Genevieve Malnar used the power of attorney to open a checking account, from which she wrote checks and paid bills for Frances.

On June 18, 1973, Frances was again hospitalized for increasing liver failure. During her stay in the hospital, Frances was visited regularly by her long-time friend, Mary Miksha, the mother of the proponent, Genevieve Malnar. Mary Miksha had been a neighbor of Frances in Willard, Wisconsin, before Mary moved to Marshfield in the early 1950's. After she moved to Marshfield, Mary visited Frances approximately every other week. This had continued for some twenty years. These visits continued while Frances was hospitalized. During a visit to the hospital in June 1973, Frances told Mary she wanted to move in with Mary. Frances did not believe that she could remain in her home in Greenwood any longer, because she was too sick. Mary told Frances that she was welcome to come any time. The two women talked about arrangements for some kind of payment for allowing Frances to move in with Mary, but they did not agree on any specific amount. Frances told

Mary that this could be settled when Frances moved in with Mary. Frances was released from the hospital on July 3, 1973. Instead of moving in with Mary, however, she went to the Marshfield Convalescent Center on the advice of her doctor, Dr. Wyman. She stayed there from July 3, 1973, until her death on September 3, 1973.

Mary Miksha continued to visit Frances Malnar regularly after Frances went to the convalescent center. They had a conversation in Croatian on July 29, 1973. According to Mary, they talked just like two sisters about Frances moving from the convalescent center to Mary's home. Frances told Mary she would sell her house in Greenwood or give it to Mary's daughter, Genevieve. Mary advised her not to do so, because Frances might not like it in Mary's home and if she disposed of her property she would have no place to go. Frances agreed with Mary and decided that she would keep the house.

On July 30, 1973, Genevieve Malnar contacted William J. Dehn, a Marshfield attorney who had previously done some work for Genevieve's mother, Mary Miksha. Dehn did not know Genevieve or Frances Malnar. Genevieve asked Dehn to come to the convalescent center to draft a will for Frances. Dehn went to the center and met Genevieve and her husband, Emil Malnar, a nephew of Frances Malnar by marriage. They went to Frances' room, where Frances was lying in bed. Dehn started to talk to Frances, realized that Frances was not understanding him, and asked Genevieve to translate. Dehn did not speak Croatian nor did he understand it. Through Genevieve, Dehn ascertained that Frances was a widow who had no living children and no brothers and sisters but a large number of nieces and nephews. He also learned through translation that Frances wanted all her property to go to Genevieve and wanted to name Genevieve the personal representative of her estate. Dehn had no knowledge of any prior will. Genevieve and

Frances then had a conversation in Croatian. Genevieve informed Dehn that Frances did not want to make a will. Dehn turned to leave. Before leaving the room, however, he turned back to Frances' bed and asked her in English if she wanted to leave all of her estate to Genevieve. Frances nodded yes. He also asked her if she wanted Genevieve to administer the estate. Frances again nodded yes. These questions were put to Frances directly without any translation. Dehn then told Frances in English that this would not be possible unless she made a will, and that if she did not make a will, her property would go to her nieces and nephews. This latter statement was translated by Genevieve. Frances looked at Dehn for a long period of time, then lowered her eyes and spoke something in Croatian. Dehn understood from her expression and demeanor that he was to go ahead and draft the will. Genevieve also translated Frances' direction to draft the will.

Dehn returned to his office, drafted the will and took it back to the convalescent center the same day. Accompanying him was Elmer Martens, the office manager of Dehn's law firm. The two went to Frances' room, where they met Genevieve and Emil Malnar. Dehn handed Genevieve a copy of the will and addressed Frances in English, while in possession of the original. He summarized the will, but did not attempt to read it line for line. Dehn then asked Genevieve to translate what he had said. After Genevieve completed the translation, Dehn addressed Frances in English, without the aid of translation. Dehn asked Frances if she realized this was her will, and she nodded. He asked her if she realized that, if she signed the will, her nieces and nephews would not receive any of her estate. Frances gave some indication that she did. Dehn then explained that the will would give everything to Genevieve and that Genevieve would be the administrator. He then

asked Frances if she was ready to execute the will. She nodded yes. Because Frances was weak and the bed could not be raised, Genevieve and Emil propped her up with pillows and held her. She then tried to sign the will with a ballpoint pen given her by Dehn, but she could not exert enough pressure to make the pen write. Dehn asked her to make an X, which she did, and he marked the will above and below the mark. Martens and Dehn then signed as witnesses.

On the foregoing record, the trial court denied probate of the will. This appeal raises two issues. First, is there sufficient evidence that Frances Malnar understood the contents of her will. Second, did the objector prove undue influence by clear and convincing evidence.

Proof that a will has been duly executed creates a presumption that the will is valid, but this court has held that the presumption is overcome by evidence showing that the testatrix did not know the contents of the instrument at the time of its execution. *Estate of Barnes* (1961), 14 Wis. 2d 643, 112 N. W. 2d 142.

If a will has been duly executed, it is presumed that the testatrix understood the contents of the document she has signed. *Will of Walter* (1885), 64 Wis. 487, 25 N. W. 538. Once the proponent establishes that the will was duly executed, the burden of persuasion shifts to the opponent to bring forth evidence indicating that the nonexistence of the presumed fact (knowledge of contents) is more probable than its existence. Sec 903.01, Stats.[1] An opponent to the will satisfies this burden by showing that the testatrix did not understand the language in which the will was written. Where this is the case, it is presumed that the testatrix did not understand the contents of the will. *Walter, supra.* Once an op-

[1] Sec. 903.01, Stats., was created by Supreme Court Order 59 Wis. 2d R41, effective January 1, 1974. The trial of this case was held in April 1974.

ponent to the will shows that the testatrix did not understand the language in which the will was written, the proponent of the will carries the burden of showing that the testatrix was correctly informed of the contents of the will and understood it. Sec. 903.01, Stats.; *Barnes, supra; Will of Arneson: Quale v. White* (1906), 128 Wis. 112, 107 N. W. 21; *Will of Zych* (1947), 251 Wis. 108, 28 N. W. 2d 316. Proponent may satisfy this burden in any number of ways, normally by showing that the contents of the will were communicated to the testatrix in her own language or by showing that the will was drafted according to her directions. *Walter, supra; Quale, supra; Zych, supra.*

In the instant case, the trial court held that there was no proof that the testatrix understood the contents of the will, so that the proponent, Genevieve Malnar, had failed to carry her burden of making satisfactory proof on this issue. The court noted that the contents of the will had only been summarized by Dehn, the draftsman, and that the information had been relayed by Genevieve Malnar, the sole beneficiary, who was foreclosed from testifying as to what she told the deceased under the Dead Man's Statute, sec. 885.16. The court also noted that paragraph 1 of the will refers to nieces and nephews and states that the testatrix had no knowledge of their names and addresses. The court noted that this was not accurate, because in the past she had sent money orders to some and letters to others.

It is clear that the proponent is unable to show that testatrix knew the contents of the will by virtue of Genevieve's translation, as proponent was the translator and was foreclosed, under the Dead Man's Statute, sec. 885.16, from testifying what was translated. Proponent, however, attempts to show that Frances Malnar had knowledge of the contents of the will by arguing that the will was drawn in accordance with her instructions. Proponent contends that testatrix thus had knowl-

edge of the dispositive scheme of the will and thus was aware of the contents of the will. While we agree that a knowledge of the dispositive scheme may suffice to show a knowledge of the contents of the will, we cannot say that testatrix had such knowledge in the present case.

Absent the testimony of the translator in this case, the only evidence indicating that the will was drawn in accordance with the testatrix's instructions or showing testatrix's knowledge of the dispositive scheme comes from Attorney Dehn. Dehn testified that, prior to preparing the will, he asked Frances in English, and without the aid of translation, whether she wanted to leave all of her estate to Genevieve and whether she wanted Genevieve to administer the estate. Dehn testified that Frances nodded yes to both of these inquiries. Dehn also testified that, just prior to the execution of the will, he explained that the will gave everything to Genevieve and nothing to her nieces and nephews. Dehn then asked Frances in English whether she realized this was her will and whether she was ready to execute the will, to which Frances nodded yes.

While the above testimony is certainly probative of testatrix's knowledge of the contents of the will, the trial court felt that it was insufficient to show clearly that the testatrix was accurately informed of the contents and meaning of the will. This is what is required. *Walter, supra; Quale, supra.* A finding of fact by the trial court will not be upset on appeal unless it is against the great weight and clear preponderance of the evidence. *Estate of Velk* (1972), 53 Wis. 2d 500, 192 N. W. 2d 844.

On appeal we examine the record, not for facts to support a finding the trial court did not make or could have made, but for facts that support the finding the trial court did make. *Estate of Hamm* (1975), 67 Wis. 2d 279, 282, 227 N. W. 2d 34. Given the fact that the testatrix

spoke very little English and given the error appearing on the face of the will in regard to testatrix's knowledge of the addresses of her nieces and nephews, as well as the other circumstances present here, we cannot say that testatrix's nods to the several inquiries put to her in English by Attorney Dehn concerning the dispositive scheme of the will were sufficient to show clearly testatrix's knowledge of the contents and meaning of the will. In any event, we cannot say that the trial court's finding to the contrary was against the great weight and clear preponderance of the evidence.

Apart from the question of testatrix's knowledge of the contents and meaning of the will, the will was properly denied admission to probate because of undue influence in the execution of the will.

Ordinarily, the test of undue influence on a testatrix is fourfold: (1) Was there opportunity to influence, (2) was there a disposition to influence, (3) was there susceptibility to influence, and (4) was a coveted result obtained. An opponent to the will must prove each of these elements by clear, satisfactory, and convincing evidence. *Estate of Von Ruden* (1972), 55 Wis. 2d 365, 373, 198 N. W. 2d 583.

Undue influence may also be proved under a second approach. Where the relationship between the testatrix and the principal beneficiary is "confidential or fiduciary" in nature, that fact, "coupled with the existence of 'suspicious circumstances,'" is enough to create the presumption or inference[2] of undue influence. *Von Ruden, supra,* p. 373.

---

[2] The court has referred to this as both a presumption of undue influence *(Estate of Hamm, supra; Estate of Steffke* (1970), 48 Wis. 2d 45, 51, 179 N. W. 2d 846) and as an inference of undue influence. *Estate of Von Ruden, supra; Estate of Komarr* (1970), 46 Wis. 2d 230, 240, 175 N. W. 2d 473. The court

An examination of the record in the instant case clearly shows that the opponent of the will was entitled to invoke the presumption of undue influence. Genevieve Malnar was given a power of attorney for Frances Malnar in July 1972. Thus, there was a fiduciary relationship between the proponent—sole beneficiary—and the testatrix. *Estate of Von Ruden, supra,* p. 377. Furthermore, there existed a confidential relationship between testatrix and the person who engaged in procuring the drafting of the will and who took a benefit thereunder—Genevieve Malnar. Frances Malnar relied heavily on Genevieve Malnar for transportation, maintaining her household, assisting her in taking medication, making translations for her, and assisting her in financial matters. These factors indicate the presence of a confidential relationship. *Will of Cooper* (1965), 28 Wis. 2d 391, 137 N. W. 2d 93; *Estate of Steffke* (1970), 48 Wis. 2d 45, 179 N. W. 2d 846.

The record is also replete with suspicious circumstances surrounding the execution of the will. Proponent procured the drafting of the will and participated in the drafting and execution of the will in which she was the sole beneficiary. The attorney who drafted the will was

has noted, however, that whether the rule be stated in terms of an inference or a presumption makes very little difference from a practical standpoint. This is because this type of presumption is not one which disappears upon the introduction of any evidence that conflicts with the presumption. *Barnes, supra,* 651, 652 (concurring opinion of Justice Currie citing *Schlichting v. Schlichting* (1961), 15 Wis. 2d 147, 112 N. W. 2d 149). Indeed, under the new rules of evidence this is true for all presumptions. Sec. 903.01, Stats. Under sec. 903.01, the procedural result of an inference of undue influence is equated with that of a presumption. This is so because a *prima facie* case of undue influence is made upon a showing of the dual elements of confidentiality and suspicious circumstances. *Komarr, supra. See:* Judicial Council Committee's Note, 59 Wis. 2d R47.

not the personal attorney of the deceased. Rather, he was the attorney of the proponent's mother and had never met the testatrix. Proponent did all of the translation required in the execution of the will. Attorney Dehn was informed by Genevieve, translating for Frances, that Frances had no sisters when she did have a sister living in Yugoslavia. There was not explanation given for the sudden change in the attitude of the testatrix from that expressed in the 1971 will, which bequeathed her estate to nieces and nephews as well as leaving money to the church of which she was a member. The 1973 will eliminated the nieces and nephews as well as the church and substituted proponent as the sole beneficiary. The will was made in haste—the discussion of the terms of the will and its execution were completed on the same day. Testatrix showed some reluctance in making the will and, in fact, at first refused to do so, but suddenly and without explanation changed her mind. The testatrix was in such a weak and debilitated condition that she had to be held up in bed, and even then did not have the strength to sign her name. At the funeral, Genevieve told one of the nephews that she knew that Frances left a will naming her as personal representative, but did not know the contents of the will. None of the nieces and nephews had been informed of the seriousness of testatrix's condition in the summer of 1973 or that testatrix was considering making another will, despite the fact that proponent knew that testatrix was near death. Rather, proponent waited until after testatrix's death to inform the nieces and nephews of what had transpired. Many of these factors have previously been recognized by this court as evidence of suspicious circumstances. *Komarr, supra; Von Ruden, supra; Hamm, supra; Will of Faulks* (1945), 246 Wis. 319, 17 N. W. 2d 423; *Estate of Perssion* (1963), 20 Wis. 2d 537, 123 N. W. 2d 465.

The basis for the undue influence presumption lies in the ease in which a confidant can dictate the contents,

and control or influence the drafting, of a will either as the draftsman or as one who procures the drafting. *Hamm, supra,* p. 294. We agree with the trial court that the opponent to the will introduced sufficient evidence to entitle him to the benefit of the presumption.

Once the presumption was established, the burden of persuasion shifted to the proponent, Genevieve Malnar, to introduce sufficient evidence to rebut the presumption. Genevieve had the burden of proving that the nonexistence of the presumed fact (undue influence) was more probable than its existence. Sec. 903.01, Stats.

In attempting to satisfy her burden of persuasion, Genevieve Malnar introduced evidence indicating that testatrix was a strong-willed woman who was not susceptible to influence. Proponent also introduced evidence indicating that the result obtained under the will in question was not unnatural under the circumstances for the proponent expended a significant amount of time caring for Frances and that Frances viewed the proponent as a daughter. Such evidence, though highly probative on the question of undue influence (*Perssion, supra; Hamm, supra*), does not necessarily overcome the presumption of undue influence. *Komarr, supra.*

The dispositive issue is whether the trial court's finding of undue influence on the part of Genevieve Malnar was contrary to the great weight and clear preponderance of the evidence. *Hamm, supra.* The trial court could not find that the evidence adduced by proponent was sufficient to overcome the presumption of undue influence by Genevieve Malnar. While the evidence presented by the proponent could support a finding of a lack of undue influence, we cannot conclude that the trial court's finding of undue influence is against the great weight and clear preponderance of the evidence.

*By the Court.*—Order affirmed.