DETROIT TRUST CO. v. STOEPEL.

1. DESCENT AND DISTRIBUTION—CHILD OMITTED FROM WILL.
    Where a child is born subsequently to the making of a will by her father without provision therein having been made for her, she is entitled to share in his estate the same as if he had died intestate (2 How. Stat. § 5809).

2. WILLS—CONSTRUCTION—TRUSTS.
    In suit to construe trust provisions of a will, brought about 50 years after will had been probated and after various distributions and annual accounts had been filed, the validity of the will is not in issue.

Constructional preference for early vesting, see 3 Restatement, Property, § 243, comment i.

3. SAME—STATUTORY SHARE OF WIDOW AND OMITTED CHILD.
    The right of a testator's child who has been omitted from his
    will and of his widow to take their statutory shares does
    not affect the will except to reduce the amount of testate
    property (2 How. Stat. §§ 5733, 5809, 5824).

4. SAME—CONSTRUCTION—STATUTES OF DESCENT AND DISTRIBUTION.
    That construction of a will which will distribute the testator's
    estate most nearly in accordance with the statutes of descent
    and distribution is favored.

5. SAME—CONSTRUCTION—VESTING OF ESTATES.
    The law favors the construction of a will which regards an
    estate vested rather than contingent.

6. TRUSTS—CESSATION OF PURPOSE—ESTATE OF TRUSTEE.
    When the purpose of an express trust ceases, the estate of the
    trustee ceases (3 Comp. Laws 1929, § 12989).

7. WILLS—CONSTRUCTION—SUBSEQUENT    REMARRIAGE—AFTERBORN
    CHILDREN.
    In construing a will which was executed by a widower before
    he had remarried and had an afterborn child, the court seeks
    to ascertain the testator's intent by a consideration of all
    of the provisions of the will in the light of the circumstances
    surrounding him at the time the will was made.

8. SAME—REAL ESTATE—PRESUMPTIONS.
    When a testator devises real estate all of his estate therein is
    presumed to pass by' the will (2 How. Stat. § 5786).

9. SAME—AVOIDANCE OF INTESTACY.
    No part of a testator's estate should be treated as intestate
    if it can be reasonably avoided.

10. SAME—TRUSTS—INTENT.
    Provision of will bequeathing ''all my property to my trustees
    * * * in trust for the following purposes'' indicated
    testator's intention to pass all of his property for the benefit
    of the beneficiary daughters therein named.

11. SAME—TRUSTS—INCOME—VESTING OF INTERESTS.
    Will bequeathing all of widower-testator's property to trustees
    for benefit of his three daughters with a grant of the net
    income from respective share to each of them and remainders
    over to others than the nominated trustees gave each named
    daughter a present interest in the income, no beneficial in-
    terest in the trustees and a vested interest in the beneficiaries.

12. SAME—CHILD OMITTED FROM WILL—TRUSTS.

Child born after the execution of will by testator and who was not provided for therein but who received her full share of the estate cannot predicate a claim upon any of the trust property conveyed by the will to trustees for the benefit of her half-sisters (2 How. Stat. § 5809).

Appeal from Wayne; Webster (Arthur), J. Submitted June 8, 1945. (Docket No. 18, Calendar No. 43,009.) Decided October 8, 1945.

Bill by Detroit Trust Company, testamentary trustee under the will of Francis Adams, against Katherine A. Stoepel and others for construction of will of Francis Adams, deceased. Separate cross-bills by defendant Starr Carlton Pardee and Dorothy Louise Pardee for construction of same will and accounting. From decree entered, defendant Katherine A. Stoepel appeals. Affirmed.

*William B. Giles,* for plaintiff.

*Leslie T. Jones,* for defendant Stoepel.

*George E. Brand,* for defendant Starr Carlton Pardee.

*Julian F. Russell* and *Joseph Choate,* for defendant Dorothy Louise Pardee.

*Lawson & Giles* (*William B. Giles,* of counsel), for defendant Detroit Trust Company, executor of will of Annie Graves, deceased.

SHARPE, J. This case involves the construction of the will of Francis Adams which was executed July 8, 1885. At the time the will was executed, Francis Adams was a widower with three daughters living, namely, Mary Louise Adams, Annie Graves Adams, and Evelyn Francis Adams. Subsequently,

he married and of this marriage there was born one daughter, now Katherine A. Stoepel. Francis Adams died in 1893 and at that time the three children by his first wife were more than 20 years of age while Katherine A. Stoepel was four years old.

By his will testator devised and bequeathed all of his property "to my trustees hereinafter named in trust for the following purposes." After instructions to pay testator's debts and certain monetary payments including one to St. Luke's Hospital Church Home and Orphanage, the will provided that:

"The remainder of my estate to be divided into three equal parts, one share to be held by my trustees for each of my daughters, Evelyn Francis, Annie Graves and Mary Louise Adams.

"During the minority of my daughters, my trustees are to pay to each, from the income of her share, a sufficient sum for her proper support and education. When each comes of age, she shall be paid $1,000 and from and after this time, she shall receive the net income of her share, after the payment of the proper expenses for the care and protection thereof.

"Each of my daughters, when she arrives at the age of 24 shall be one of the trustees of her share.

"Upon the death of either of my daughters, leaving children, the trustees of her share shall retain the same until the youngest of such children shall be 21 years of age, using such portion of the income as may be necessary, in case they are without other adequate resources, for their maintenance and education. Said trustees to have the discretion to advance to any such child of my daughter, if they consider it for his or her advantage a sum not to exceed 40 per cent. of the estimated value of his or her share, at any time after he or she becomes of age.

"In case of the death of either of my daughters, leaving no children, ⅕ of her share shall be disposed

of as provided by her last will and testament. One tenth shall be paid to St. Luke's Hospital Church Home and Orphanage, upon the same conditions as are attached to the legacy hereinbefore made to that institution. One-half of the remainder shall be paid to her surviving sister or sisters, in equal shares, and the other half to the trustees of such surviving sister or sisters, in equal shares, to be held by them under the trust hereinbefore created.

"I hereby appoint Frederick E. Driggs and Henry E. Harmon (of Medaugh, Driggs & Harmon) & George E. Avery, executors and trustees under this my will. They to give bonds not to exceed $2,000 and to have full power to sell and convey any of the property hereby devised, at public or private sale, for cash or on time, as may seem most advantageous; and to invest and keep invested the proceeds thereof, until the expiration of the trust hereby created; and to do all things in the care, protection and management of said property that I could do, if alive. My daughters to become trustees of their several shares, as above provided and to give no bonds. Upon the death of any of the trustees herein appointed, the vacancy is to be filled by the surviving trustees and in that case the appointment is to be approved by all my surviving daughters who may be of age. Provided that the husband of either of my daughters shall not become a trustee under any of such trusts."

The will was presented for probate to the probate court of Wayne county on December 16, 1893, and admitted to probate on June 19, 1894. The estate consisted of a large amount of real and personal property. The will was subject to the following statutory rights of testator's widow.

"The widow of every deceased person shall be entitled to dower, or the use, during her natural life of one-third part of all the lands whereof her hus-

band was seized of an estate of inheritance, at any time during the marriage, unless she is lawfully barred thereof." 2 How. Stat. § 5733, being 3 Comp. Laws 1897, § 8918.*

"All dispositions of personal property by last will and testament shall be subject to the following limitations and restrictions:

"First, If the testator shall leave surviving him, a wife, the testamentary disposition shall be subject to the election of such wife, to take any interest that may be given to her, by the testator in his last will and testament; or in lieu thereof, to take the sum or share that would have passed to her, under the statute of distributions, had the testator died intestate, until the sum shall amount to five thousand dollars, and of the residue of the estate one-half the sum or share that would have passed to her, under the statute of distributions, had the testator died intestate, and in case no provision be made for her in said will, she shall be entitled to the election aforesaid." 2 How. Stat. § 5824, being 3 Comp. Laws 1897, § 9300.†

"The election to take otherwise than under the will, in any contingency above contemplated, shall be made in writing, and filed in the court in which proceedings for the settlement of the estate are being taken, within one year from the probate of the will; and the failure to file such election within the time above provided shall be deemed an election to take under the will." 2 How. Stat. § 5825, being 3 Comp. Laws 1897, § 9301.†

The widow elected to take under the statute and reserved her statutory dower. She died December 16, 1931. The daughter, Katherine, having

---

* See 3 Comp. Laws 1929, § 13072 (Stat. Ann. § 26.221).—RE-PORTER.

† See Act No. 288, chap. 2, § 69, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 16289-2 [69], Stat. Ann. 1943 Rev. § 27.3178 [139]).—REPORTER.

been born subsequent to the making of the will and no provision having been made for her, was entitled under 2 How. Stat. § 5809,* to take the same proportion as if the testator had died intestate.

The executors' final account was allowed and upon order of the court, the residue of the estate was distributed and assigned as follows:

"Realty: ¼ to Katherine; ¾ to the trustees for Mary, Annie and Evelyn—all subject to the widow's right of dower.

"Personalty: (⅓ of first $15,000) and ⅙ of the remainder to the widow; ¼ of the remainder to Katherine; ¾ of the remainder to the trustees for Mary, Annie and Evelyn."

The probate court appointed the Union Trust Company guardian of Katherine. She became of age January 29, 1911. On February 21, 1911, she gave her guardian a final receipt for $40,434.11 which recited that the guardian "has settled with me to my full satisfaction its account as my guardian."

Mary Louise Adams, then Mary Louise Pardee, died March 5, 1900, leaving two children, Starr C. Pardee, born May 31, 1898, and Dorothy L. Pardee, born May 12, 1899. During Mary Louise Adams' life she received the income from the property trusteed for her benefit and, thereafter, such property was retained by the trustee until Dorothy L. Pardee became of age May 12, 1920, whereupon the property was delivered to Starr Pardee and Dorothy Pardee in equal portions.

On December 23, 1920, the Security Trust Company, successor trustee of Driggs, Avery and Harmon, filed the trustee's ninth account reciting that:

"By the terms of the last will and testament of said Francis Adams, deceased, ⅓ of his estate was

_____
* See Act No. 288, chap. 2, § 12, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 16289–2 [12], Stat. Ann. 1943 Rev. § 27.3178 [82]).

held in trust for each of his three daughters during their lives, and upon the death of each daughter her respective share of the estate was directed to be distributed equally to her surviving children when the youngest of such children became of age.

"That Mary Louise Adams Pardee, one of the daughters of said deceased, died on the 5th day of March A.D. 1900, and was survived by two children Starr Carlton Pardee and Dorothy L. Pardee. That said Dorothy L. Pardee, the younger of said children, arrived at the age of 21 years on the 12th day of May, 1920. That your petitioner thereupon made distribution to said children of their joint ⅓ share of said estate under the terms of said will, as is more fully shown by the schedule of distribution of the estate and by the receipts of said Starr Carlton Pardee and Dorothy L. Pardee which are hereto attached and made a part hereof.

"Your petitioner further shows that, at the time of the distribution to said Starr Carlton Pardee and Dorothy L. Pardee of their shares of said estate, it was found advisable to divide and set apart the residue of said estate into two separate trusts, for Evelyn Francis Adams and Annie Graves Adams, the surviving daughters of said deceased, and that thereafter individual trust accounts for said daughters have been kept by your petitioner as is more fully shown by the foregoing accounting. That hereafter your petitioner will file separate accounts as trustee for Evelyn Francis Adams and Annie Graves Adams, respectively."

Notice of hearing on the account was published and on January 25, 1921, the account was allowed. Beginning with the trustee's tenth account filed February 9, 1922, it filed separate accounts as to the trusts for Annie Graves Adams and Evelyn Francis Adams. In 1929, the Security Trust Company consolidated with the Detroit Trust Company. Annually the trust company filed its accounts, which were allowed.

Evelyn F. Adams died testate May 27, 1936, without issue. Her will was admitted to probate in California. On December 13, 1937, a decree of distribution was entered decreeing that the residue of her estate be distributed to Starr C. Pardee and Dorothy L. Pardee in equal shares.

On January 23, 1937, the Detroit Trust Company, trustee, filed its twenty-fifth and final account as to the one-third trusteed for Evelyn's benefit. At the time of her death, the value of the trust as to her was $67,298.89. On March 9, 1937, the account was allowed and distributed under the will of Francis Adams as follows:

> "To St. Luke's Hospital Church Home
>      and Orphanage                          1/10
>   To Starr Carlton Pardee                   1/10
>   To Dorothy Louise Pardee                  1/10
>   To Annie Graves Adams                     7/20
>   To Detroit Trust Co., in trust for
>      Annie Graves Adams                     7/20"

Annie Graves Adams died testate June 1, 1943, leaving no children surviving her. During her lifetime she received the income from the trust for her benefit. The value of the trust at the time of her death was $89,417.68 less a bank assessment liability. Her will was admitted to probate July 6, 1943, and the Detroit Trust Company was appointed and qualified as executor. After bequeathing her personal effects to Dorothy L. Pardee and $4,000 to specific legatees, her will provided:

"9. I give, devise and bequeath to the residuary legatees and devisees named in the next succeeding paragraph of this, my last will and testament, being paragraph 10 hereof, as their interests therein appear, all of my right, title and interest in and to that portion of the estate of my father, Francis Adams,

which, according to the provisions of his last will and testament, I have the power to dispose of under this, my last will and testament.

"10. All the rest, residue and remainder of my estate of every kind and nature, wheresoever situate, I give, devise, and bequeath to my niece Dorothy Louise Pardee, of Los Angeles, California, and my nephew Starr Carlton Pardee, of San Francisco, California, share and share alike."

On October 4, 1943, the Detroit Trust Company, as trustee under the will of Francis Adams, filed its bill of complaint in the chancery court of Wayne county praying for a construction of the Adams' will and a determination of the ownership of the balance of the corpus of the trust in its hands, which is in the approximate amount of $55,000. Defendants Starr C. Pardee and Dorothy L. Pardee filed cross bills in which they assert that the testator's widow and Katherine A. Stoepel had received from the Francis Adams estate their full and only interest; and that the trust set up in the will related solely to the residue of the estate in which the widow and Katherine A. Stoepel have no interest. They also assert that the orphanage should be limited to one-tenth of the fund originally trusteed for Annie's benefit. The orphanage asserted in its answer to the cross bill that it was also entitled to one-tenth of the accretion to the trust for Annie's benefit caused by Evelyn's death. Katherine A. Stoepel filed an answer to the bill of complaint and cross bills. She claimed at the trial that all of the original beneficiaries having died, a portion of the estate did not vest and falls back into the estate of Francis Adams to be distributed to his heirs, of which she is one.

On December 4, 1944, the trial court filed an opinion in which he determined that the widow had re-

ceived her statutory interest in the estate and was
entitled to nothing more; that Katherine A. Stoepel
had also received all of her share in the estate and
had no interest in the remainder of the estate; and
that the orphanage was entitled to one-tenth of
the trust fund as originally created for Annie's bene-
fit augmented by the accretions resulting from
Evelyn's death. A decree was entered conforming
to the opinion filed.

Katherine A. Stoepel, defendant, appeals and
urges that the title and ownership of the $55,000
which remains as a result of the trust having failed
did not vest in the three daughters of Francis
Adams; and that the estate claimed for the three
daughters violates the statute against restraint on
alienation* and the rule against perpetuities.

Appellees claim that the right of the widow and
Katherine A. Stoepel to take statutory shares in the
estate of Francis Adams did not create intestacy as
to others, nor affect the will except to reduce the
amount of testate property; that the widow and
Katherine A. Stoepel, having had their maximum
shares, Katherine A. Stoepel is not a party in in-
terest as to any part of the remaining trust fund;
that the funds in question are a portion of testator's
estate that was assigned and distributed to the tes-
tamentary trustee by court order; that such order
is now *res judicata;* and that under the will of
Francis Adams:

"1. Evelyn and Annie Adams respectively took
a vested estate in the thirds originally trusteed for
their respective benefit, subject to the trustee's right
of possession for their benefit and to partial de-
feasance upon certain contingencies.

* See 3 Comp. Laws 1929, § 12934 *et seq.* (Stat. Ann. § 26.14 *et
seq.*).—REPORTER.

"2.    Evelyn's vested estate terminated upon her death without children and passed $\frac{1}{5}$ perforce her will to Starr and Dorothy, $\frac{1}{10}$ to St. Luke's, $\frac{7}{20}$ to Annie outright and $\frac{7}{20}$ to the trustee for Annie's benefit.   Annie's $\frac{7}{20}$ interest, thus derived, was also a vested estate, subject only to the trustee's right of possession for her benefit and to the contingency of $\frac{1}{10}$ passing to St. Luke's in the event Annie died without issue.

"3.    When Evelyn died (following Mary's death) all trustee function as to her share ceased except during Annie's life to collect and distribute the income on the $\frac{7}{20}$ of Evelyn's share which was added to Annie's trust.   When Annie died without children, the only remaining trustee function as to Annie's original $\frac{1}{3}$ and the $\frac{7}{20}$ from Evelyn's share was to deliver to St. Luke's its share.   Whereupon the remaining property held for Annie's benefit was freed from the trustee's possessory right and vested in Starr and Dorothy as Annie's sole devisees and legatees."

The validity of the will is not in issue, nor does the right of the widow and daughter, Katherine A. Stoepel, to take their statutory shares affect the will except to reduce the amount of testate property. See *In re McLennan's Estate,* 179 Mich. 595.   The principal issue in this case relates to whether Evelyn and Annie Adams took a vested estate in the property trusteed for their benefit subject to the trustee's right of possession for their benefit and to partial defeasance upon certain contingencies.

In *Gardner* v. *City National Bank & Trust Co.,* 267 Mich. 270, 279, we said:

"The law favors that construction of a will which will distribute the testator's estate most nearly in accordance with the statutes of descent and distribution.   *Rivenett* v. *Bourquin,* 53 Mich. 10.   It favors

the vesting of estates. *Toms* v. *Williams,* 41 Mich. 552; *Hull* v. *Osborn,* 151 Mich. 8; *Taylor* v. *Richards,* 153 Mich. 667; *Van Gallow* v. *Brandt,* 168 Mich. 642.''

The law favors the vesting of estates. In *Rodey* v. *Stotz,* 280 Mich. 90, 100, we said: ''The law favors the construction which regards an estate vested rather than contingent.'' See, also, *Rood* v. *Hovey,* 50 Mich. 395; *Union Mutual Association of Battle Creek* v. *Montgomery,* 70 Mich. 587 (14 Am. St. Rep. 519).

In *Taylor* v. *Richards,* 153 Mich. 667, William Davis died leaving a will and codicil in which he gave, devised and bequeathed to William H. Davis a farm and personal property thereon and authorized his executors to sell and convey the real estate and use the proceeds and income for the support and education of William H. Davis. The will also provided:

''The title thereto (the farm) to remain in my executors until he arrives at 25 years of age, when, if he shall show himself worthy and of steady habits, my said executors shall, if they deem it safe and for his best interest, transfer and convey said farm * * * to * * * said William H. Davis, or in case they shall have previously sold said farm then they shall transfer to said William H. Davis the proceeds * * * if they shall so deem it safe and for his best interest.''

The testator left a widow who elected to take her dower and distributive portion under the statute. Upon the death of William H. Davis in 1906, the court was asked to construe the William Davis will and determine whether William H. Davis had a vested estate in the farm. The court said:

''It is clear to us that the testator intended by his will to bequeath his entire estate in the Davison

farm. We must therefore hold that by the will the entire estate passed to the devisees therein named. Those devisees are William H. Davis and testator's executors. To the executors was bequeathed no beneficial interest. The devise to them was merely in trust. To William H. Davis was devised the entire beneficial interest. He was the sole beneficiary of the trust. When the purpose of the trust ceased, the estate of the trustee ceased. Section 8851, 3 Comp. Laws 1897.* That purpose ceased when William H. Davis died, and, he being then the owner of the entire beneficial interest, the entire estate descended to his heirs."

In coming to our conclusion we have in mind that at the time the will was executed testator's children by his first wife were the only natural objects of his bounty; that the primary rule of construction of wills is to ascertain the true intention of the testator and such intention must be ascertained from a consideration of all the provisions of the will in the light of the circumstances surrounding the testator at the time the will was made (*Kirsher* v. *Todd,* 195 Mich. 297); that under the statute testator's entire estate insofar as it concerns real property is presumed to pass by the will (2 How. Stat. § 5786),† while in *Mann* v. *Hyde,* 71 Mich. 278, we said: "Under our statutes, as well as under the general policy of the law, no part of a testator's estate should be treated as intestate if it can be reasonably avoided;" and that the will reads, "I give and bequeath *all* my property to my trustees   *   *   *   in trust for the following purposes," thus indicating testator's intention to pass all of his property for the benefit of his three daughters. It is our opinion that the three

* This is 3 Comp. Laws 1929, § 12989 (Stat. Ann. § 26.73).—RE-PORTER.

† See Act No. 288, chap. 2, § 2, Pub. Acts 1939 (Comp. Law Supp. 1940, § 16289-2 [2], Stat. Ann. 1943 Rev. § 27.3178[72] ).—RE-PORTER.

daughters, upon the death of their father, had a present interest in the income of the property; that the bequest to the executors was in trust without beneficial interest to them; and that the trust estate provided by the will was a vested interest in the beneficiaries.   Katherine A. Stoepel having received her full share of the estate cannot predicate a claim upon any of the trust property.

The decree of the trial court is affirmed, with costs to plaintiff.

STARR, C. J., and NORTH, BUTZEL, BUSHNELL, BOYLES, and REID, JJ., concurred.   The late Justice WIEST took no part in the decision of this case.