Estate of Spenner: Spenner and another, Appellants,
v. First Wisconsin Trust Company and another,
Respondents.

*October 4—October 30, 1962.*

For the appellants there was a brief and oral argument by *George H. Moeller* of Milwaukee, for the German consul, and by *Martin J. Torphy* of Milwaukee, for Albert Spenner.

For the respondents there was a brief and oral argument by *Francis X. Krembs* of Milwaukee, for the First Wisconsin Trust Company, and by *George P. Ettenheim* of Milwaukee, for Erich Stern.

WILKIE, J. The trial court decided against the objectors on each ground that they alleged in their objections against the admission to probate of the last will and testament of the deceased, dated June 7, 1951, and the codicil

thereto dated July 19, 1951. In this connection the rule applies as stated in *Estate of Stronks* (1961), 14 Wis. (2d) 356, 368, 111 N. W. (2d) 71, as follows:

"This is obviously a fact case. The trial judge was the trier of the facts. He was the sole judge of the weight and credibility to be given to the testimony of the different witnesses. This court has many times commented upon the fact that the trial court sees the witnesses, observes their conduct and demeanor in court, and is in a position to determine such questions. Therefore, the findings of fact by a trial court must be sustained unless they are against the great weight and clear preponderance of the evidence."

We examine here each one of the objections as raised and as settled by the trial court.

(1) *Were these instruments the last will and testament of the deceased?* There was testimony on the part of Attorney Croen, the only living witness to the will, and by Mr. Erich Stern, the decedent's cousin and attorney and draftsman of the will, that the contents of the will were discussed with the decedent and that she published and declared the will dated June 7, 1951, as her last will and testament at the time she signed the will in accordance with the statutes of the state.

Objectors claim that a letter from the decedent, bearing the same date June 7, 1951 (objectors' Exhibit 1), was attached to the will and was signed by the decedent at the same time, and this letter made it clear that the will was not her expressed will and that she really intended to leave her estate to her long-lost son. The letter in question reads as follows:

"To My Dear Husband and My Dear Cousins:

"As you know, my dear son, Norman, disappeared in action in January, 1945, and has not been heard from since. This, of course, is the reason he is not mentioned in my

last will, of even date with this letter. However, if, contrary to present indications, Norman should still return before I can change my will, I hereby request you all most earnestly to take care of my dear child out of my property as you know I would have wished.

"Dated, June 7th, 1951.

"Lovingly yours,

"s/ Ilma Cramer Spenner."

The testimony is undisputed that the letter was sent by Attorney Stern to the First Wisconsin Trust Company along with the will and that, although signed by Mrs. Spenner, the letter was not witnessed as would be a will. There is a dispute about whether or not the letter was ever actually stapled to the will, but in any event the letter was merely a reasonable explanation of why the deceased had not provided for her son in her will. In her will she left her entire estate (estimated at approximately $100,000) in trust with the life income therefrom to her husband. She then provided that the remainder was to be divided among her cousins. At the time she had not heard from her son since 1945 and knew nothing of his whereabouts. She did not know whether he was alive or dead and hence it was perfectly normal for her to execute the will that she did, and at the same time it was normal for her to write this explanatory letter indicating in precatory language that if Norman ever turned up it was her desire, of course, to change the will and provide for him, but in case he turned up and she did not get around to changing the will, she requested her husband and her cousins most earnestly to take care of him. On this record the court found that this letter was not a part of the last will and testament of the deceased and that the actual will designated as proponents' Exhibit 1, dated June 7, 1951, was the last will and testament of the deceased and entitled to probate. The codicil,

executed July 19, 1951, merely added three named cousins who had been omitted from the first will. In all other respects the will, as executed, was confirmed and the court ruled that this codicil was also entitled to be admitted to probate. The findings of the trial court are supported by the evidence and must be sustained.

(2) *Were the will and codicil of the deceased duly executed?* The trial judge succinctly states:

"The testimony discloses that the purported will and codicil were duly executed by Ilma Cramer Spenner, deceased, as her last will and testament in the manner provided by law."

The testimony is undisputed that the signing of the will was witnessed by Attorney Philip Croen. It was also witnessed at the same time, in accordance with law, by another witness, Anna Drillsam. This witness was the secretary of Erich Stern and died before the probate proceedings. Although there was some testimony about her mental condition there was nothing to dispute the fact that she was of good mental capacity at the time that she witnessed the will. The testimony clearly supports the finding that the will and codicil were both executed in full compliance with the provisions of sec. 238.06, Stats., and the trial judge emphatically adhered to the principle stated in *Estate of White* (1956), 273 Wis. 212, 214, 77 N. W. (2d) 404:

"It is the policy of courts to sustain a will as legally executed if it is possible to do so consistently with the requirements of the statute."

(3) *Were the instruments procured by undue influence over and upon the deceased?* This is the objectors' principal objection. Objectors claim that undue influence was exerted by Erich Stern, who was the attorney for the de-

ceased but who was also her cousin and one of the beneficiaries under the will. Although Mr. Stern was not a witness to the will it is undisputed that he drafted it, that he was present during the will-signing, and that he actually shares as a beneficiary in the estate to the same extent as all of the other cousins of the deceased.

The trial court ruled as follows on this objection:

"There is no showing of sufficient weight that the purported will and codicil were procured by undue influence over and upon the said deceased."

The four elements to be proven when undue influence is asserted have been set forth in a number of Wisconsin cases. In *Will of Freitag* (1960), 9 Wis. (2d) 315, 317, 101 N. W. (2d) 108, it is stated:

"It is well established that in order to void a will because of undue influence, four elements must be proved. Stated in capsule form these are: Susceptibility, opportunity to influence, disposition to influence, and coveted result. Stated more completely: 1. A person who is susceptible of being unduly influenced by the person charged with exercising undue influence.; 2. the opportunity of the person charged to exercise such influence on the susceptible person to procure the improper favor; 3. a disposition on the part of the party charged, to influence unduly such susceptible person for the purpose of procuring an improper favor either for himself or another; 4. a result caused by, or the effect of such undue influence."

Also see *Estate of Dobrecevich* (1961), 14 Wis. (2d) 82, 109 N. W. (2d) 477.

The question of undue influence on the part of an attorney who drafts a will for a client and sets forth a provision in that will making him a beneficiary has been considered by this court in three important cases: *Will of Faulks* (1945), 246 Wis. 319, 17 N. W. (2d) 423; *Estate of*

*Barnes* (1961), 14 Wis. (2d) 643, 112 N. W. (2d) 142; *Schlichting v. Schlichting* (1961), 15 Wis. (2d) 147, 112 N. W. (2d) 149.

The legal rules fixed by these cases are as follows: A lawyer who drafts a will for a client occupies a fiduciary relationship to the testator. If the will makes him a beneficiary, there is an inference of undue influence. This is the type of inference that remains even though evidence is introduced which rebuts the inference. See *Estate of Barnes, supra* (p. 656); *Will of Faulks, supra* (p. 360); and *Schlichting v. Schlichting, supra* (pp. 155–157).

In the instant case the record is devoid of anything to show any devious or high-pressure tactics on the part of Stern, and the inference of undue influence is overcome by the evidence which clearly establishes that the result accomplished by the will produces no special benefit for Stern, as distinguished from the benefits given to other members of the same class, to wit, all of the cousins of the deceased. Specifically, the will definitely gives him a share in the estate that is identical with the share bequeathed to each and every other cousin. The great weight of the evidence supports the finding of the trial judge of no undue influence and therefore the trial court was correct in denying this particular objection.

(4) *Did the deceased have sufficient mental capacity to make a will at the time of the execution of the probate will?* Although an objection was entered on the grounds that the testatrix did not have testamentary capacity at the time she signed the will, there was no testimony supporting this objection introduced by the objectors. There was testimony by both Messrs. Croen and Stern showing that at the time of executing these instruments the decedent knew the extent and nature of her property, knew her relationship to all of the members of her family who still survived, including her

cousins, and that she was perfectly normal in her every-day conduct. The trial judge disposed of this objection by stating:

"Ilma Cramer Spenner had, at the time of the execution of said instruments, sufficient mental capacity to make a will."

This finding is supported by the evidence and the objectors have not pressed this objection in this appeal nor have they detailed any evidence to support their contention.

(5) *Were the instruments revoked by the deceased as her last will and testament?* This is another objection that appellants do not press on this appeal. The trial court ruled on this objection as follows:

"As reflected by the testimony, I am satisfied that said instruments were not revoked by the deceased as her last will and testament."

This particular objection rests wholly on the effect of the letter of June 7, 1951. There was no evidence in the record to show that the testatrix, at any time after June 7, 1951, desired to make any change in her will or to revoke it except for the one specific change in the codicil executed July 19, 1951.

(6) *Was the will dictated by the deceased?* The trial court stated as follows as to this objection:

"As to Objection 4 of the objections of Albert Spenner, the testimony shows that the deceased talked the matter over with Mr. Erich Stern, that she gave the names of some cousins and that Mr. Stern mentioned other cousins, but some time later deceased told Mr. Stern that they had not mentioned certain parties, that she wanted them included, and that she supplied the names, and that therefore the purported codicil was executed. I am satisfied that she stated to Mr. Stern her intentions for transcription. Bouvier's Law Dictionary, Rawle's Third Revision, defines the

word 'dictate' as 'to pronounce, word by word, what is meant to be written by another.' Therefore, while technically Ilma Cramer Spenner did not 'dictate' said instruments, the same embodied her desires and wants."

This finding by the trial court is substantiated by the great weight of the evidence.

Much of the appellants' case on this appeal involves their contention that the son, Norman Spenner, is still alive. They argue that the decedent intended to leave her property to her son and that the last will and testament and codicil, as presented, should not be admitted to probate and that the estate rather should go intestate with the surviving husband and the son sharing, depending upon whether the son is actually alive or not.

The evidence introduced at the trial showed that the son was born in 1926; that he entered the German army in 1945; that he was in the Russian zone; that no one has actually heard from him since that date; that the parents were in despair because of the son's being missing and the mother particularly grieved every day for him and corresponded in great volume with anybody who could possibly have any lead on his whereabouts; that the nephew of the decedent, an attorney by the name of Herbert Spenner, on behalf of the decedent, inquired of the son's whereabouts when he was in Berlin during 1959 and that, at the direction of the decedent, he gave $6,000 to a Russian officer who represented that he knew where the son was and could help get him back; that nothing came of this; and that in any event, despite all of the efforts that were made, as of the date of the signing of the wills and until her death and through these proceedings in county court, no word of any kind had been received indicating that the son was either dead or alive. No doubt, even down to her date of death,

the mother still hoped that he would be found alive. As the trial court stated: "Hope springs eternal in the human breast."

In any event, whether the son is alive or not has no bearing on the admission to probate of the two instruments of 1951. As respondents point out, if in fact the son is actually alive and his presence is made known during the probate of this estate, even after the will and codicil are admitted to probate, the son would be entitled to his intestate share under the provisions of sec. 238.11, Stats.

At best, if appellants could have established at the trial that the testatrix had mistakenly failed to provide for her son in her will or in her codicil, such evidence would not have barred the admission to probate of the will and codicil. In *Will of Mattes* (1955), 268 Wis. 447, 450, 68 N. W. (2d) 18, it was stated as follows:

"The statute was not designed to diminish or annul the right of one to dispose of his property by will; it does not attempt to regulate or control the testamentary disposition of property. Its purpose is to protect the interest of a child who by his parent's failure through accident or inadvertence has not been provided for. The will still stands but the pretermitted child takes as if the testator had left no will. The right of a pretermitted child to take under the statute does not affect the will, it operates only to reduce the amount of testator's testate property. *Detroit Trust Co. v. Stoepel,* 312 Mich. 172, 20 N. W. (2d) 148."

*By the Court.*—Judgment affirmed.