STATE, Plaintiff, v. HABERLA, Defendant.

*No. State 84. Argued May 9, 1968.—Decided June 4, 1968.*
(Also reported in 159 N. W. 2d 11.)

336

For the plaintiff there was a brief and oral argument by *Rudolph P. Regez* of Monroe, counsel for the Board of State Bar Commissioners.

For the defendant there was a brief and oral argument by *Ralph M. Hoyt* of Milwaukee.

PER CURIAM. Defendant Howard P. Haberla is a lawyer. He is presently seventy-six years of age and has practiced law in Milwaukee since his admission to the bar of this state in April, 1917.

From the hearing before the referee, it appears that in the spring of 1964, Edna Whaley, a Milwaukee resident with whom the defendant had been acquainted for over twenty years and for whom he had occasionally performed legal services, had occasion to speak to the defendant concerning the affairs of Mr. Logan. Defendant at that time was unacquainted with Mr. Logan. What motivated Mrs. Whaley to speak to the defendant concerning him was Mr. Logan's own suggestion that a guardian be appointed for him. It appears that Logan, a childless widower, seventy-four years of age, was drinking to excess and dissipating his assets at a rapid rate. At the time defendant suggested a guardian be appointed for him he was confined to the Milwaukee county hospital.

The defendant prepared a petition alleging that Logan was incompetent and that he was confined for observation at the Milwaukee county hospital and praying that he be appointed guardian. Mrs. Whaley signed the

petition and executed it. On April 23, 1964, defendant was appointed guardian. Defendant visited Logan frequently at the hospital and upon his discharge from there on June 7, 1965, defendant and Mrs. Whaley took him to a nursing home. On that day Mr. Logan expressed his wish, repeated on several occasions thereafter, that his estate be left to the two of them.

Mr. Logan was subsequently transferred from the nursing home to the Veterans' Hospital. Within a few days after his arrival there, defendant asked one Elroy Rusch, a student who occupied desk space in defendant's office in exchange for occasional typing services, to type a will for Mr. Logan's signature. The will gave all Logan's property to the defendant and Mrs. Whaley in equal shares. The defendant was appointed executor. At the bottom of the will appeared the following notation: "This will was drafted by Elroy John Rusch, of 3063 N. 22nd St., Milw. 6, Wisconsin." On August 5, 1965, Mrs. Whaley, Mr. Rusch, one Burnice Roxbury, a roomer in Mrs. Whaley's home, and the defendant, visited Mr. Logan at the hospital. He read over the will and stated it was exactly the way he wanted it. He signed it in the presence of Burnice Roxbury and Mr. Rusch. All during this time, the defendant and Mrs. Whaley were not present in Mr. Logan's room.

Mr. Logan died on July 20, 1966. On August 5, 1966, Mr. Haberla as executor filed a petition for probate of the will. The will was admitted to probate and he was appointed executor on September 6, 1966, upon notice by publication and mailing. Mr. Logan's only relatives were a nephew and two minor children of a deceased nephew, all of whom lived in California. Notice of the will proceedings reached the nephew.

In November, 1966, the nephew entered an appearance and the defendant stipulated that the admission of the will and the appointment of the executor be set aside. Thereafter, objections to the will were filed by counsel

for the nephew and were brought on for hearing before the Milwaukee county court. During the course of the hearing, a stipulation was entered into between the nephew, the guardian *ad litem* for the minor heirs, Mr. Haberla, and Mrs. Whaley, and the attorneys, whereby the will was denied probate. Mr. Haberla was appointed administrator, and the estate was to be administered as an intestate estate.

The inventory showed gross assets of $9,636.55. Expenses were paid in the amount of $3,650.68, leaving a net estate of $5,985.87. Nothing was paid to the defendant for his services as guardian or administrator, these fees having been waived by him in the stipulation. In the same stipulation he agreed to pay the inheritance tax on the estate (which amounted to $100.98) and to pay $84 of the taxable costs of the heirs in the will contest.

The referee concluded and defendant concedes that his conduct was unprofessional under the rule of *State v. Eisenberg* (1965), 29 Wis. 2d 233, 138 N. W. 2d 235, and *State v. Horan, supra.* Thus the only question the court must decide is the extent of the discipline imposed.

The unprofessional nature of the conduct of an attorney in drafting a will in which he is a beneficiary arises out of the conflict of interests between his status as beneficiary and the fiduciary relationship between attorney and client. This has been the rationale of the cited cases. The interests conflict because of the inference of undue influence which arises when one in a confidential or fiduciary relationship to the testator participates in the making of the will in which he becomes a substantial beneficiary. *Will of Faulks* (1945), 246 Wis. 319, 17 N. W. 2d 423. Thus, the attorney who drafts such a will is taking the chance that the will may be denied probate and that he will be found to have violated the trust and confidence reposed in him by his client.

Mr. Haberla argues in his defense that he was unaware of the *Horan Case* and that the *Eisenberg Case* had not been decided when the will was drafted. However, he did seek to create the impression that Elroy Rusch drafted the will whereas he merely typed it, indicating that he must have had some misgivings about what he was doing. His conduct after the will contest was a possibility also arouses suspicion; his willingness to compromise Mrs. Whaley's share before consulting her; his stipulation to the payment of the inheritance tax and certain costs as an act of penitence raise the question whether he really considered the will to be Logan's true will.

In the instant case, as is true in the *Horan Case, supra,* the testator was competent and under no undue influence at the time the will was drawn, except as such undue influence is presumed from the circumstances already noted.

The referee expressed his opinion that the discipline should be greatly tempered by the fact that all of the attorneys involved proceeded in obvious ignorance of the *Horan Case* and that when the defendant became aware of the *Horan Case,* he was at once genuinely penitent.

We think that Mr. Haberla's advanced age and his fifty-year membership in the legal profession with an apparently unblemished record prior to this time mitigate against severe punishment. Further, his payment of the taxes with costs, his service as administrator and guardian without fees indicate contriteness on his part and also indicate the likelihood of ever repeating such conduct is nil. He has received extensive newspaper publicity concerning his conduct in this matter which will most likely diminish the extent of his practice.

We have in the case of *State v. Collentine,* ante, p. 325, 159 N. W. 2d 50, an opinion which is being handed down today, established the following rule:

". . . a lawyer may be the scrivener of a will in in which he is a beneficiary only when he stands in

relationship to the testator as the natural object of the testator's bounty and where under the will he receives no more than would be received by law in the absence of a will. Under any other circumstances in which the lawyer-draftsman is a beneficiary, this court will conclude that the preparation of such a will constitutes unprofessional conduct."

We conclude that the application of this rule will eliminate the problem that arises in a disciplinary action of this nature.

Upon consideration of all of the circumstances, we deem a reprimand and imposition of partial costs sufficient discipline in this instance.

It is ordered and adjudged that the defendant be and is hereby reprimanded for his conduct and that he pay the sum of $200 toward the costs and expenses of these proceedings.