ESTATE OF KOMARR: VARGO, Appellant, v. BEAUDRY, Respondent.*

*No. 96. Argued March 2, 1970.—Decided April 3, 1970.*
(Also reported in 175 N. W. 2d 473.)

* Motion for rehearing denied, with costs, on June 2, 1970.

For the appellant there was a brief and oral argument by *Ray T. McCann* of Milwaukee.

For the respondent there was a brief and oral argument by *Roland J. Steinle, Jr.*, and *Gregory Gramling, Jr.*, both of Milwaukee.

HANLEY, J. The following issues are raised on this appeal:

(1) Was the purported will executed in conformity with sec. 238.06, Stats.;

(2) Was the purported will procured by undue influence thereby necessitating the denial of its acceptance for probate;

(3) Were the attorney-draftsman and his secretary incompetent, under sec. 885.16, Stats. (Dead Man's Stat-

ute), to testify as to the execution of the purported will; and

(4) Were certain of appellant's exhibits improperly excluded from evidence by the trial court?

### Execution in Conformity with Sec. 238.06, Stats.

The appellant contends that the execution of the will is not in compliance with sec. 238.06, Stats. Although such contention normally raises an issue of fact, we are here presented with an issue of law.

The testimony discloses that at the time of the execution of the will, the testatrix had suffered a flaccid paralysis of the left arm and left leg. On the previous day she was not able to give the doctor any past medical history or any information in reference to the various systems of her body.

The record shows that on admission to the hospital her speech was slurred and garbled. The bedside notes of the nurse on March 18, 1968, the date that the instrument was allegedly executed, stated as follows:

"P. 84. Speech is garbled @ times. Skin warm and dry . . . 'L' hand & arm appears completely flac[c]id. L. leg has some uncontrolled movement. . . ."

From the evidence it clearly appears that Mrs. Komarr was physically unable to write her signature or, unaided, even to make her mark. There is no evidence of an express direction that the scrivener make this mark for her.

Sec. 238.06, Stats., states in pertinent part:

"No will made within this state since the first day of January, 1896, except such nuncupative wills as are mentioned in this chapter, shall be effectual to pass any estate, whether real or personal, or to charge or in any way affect the same unless it be in writing and *signed by the testator or by some person in his presence and by his express direction,* and attested and subscribed in the presence of the testator by two or more competent wit-

nesses in the presence of each other. . ." (Emphasis supplied.)

This statute was construed in *Will of Wilcox* (1934), 215 Wis. 341, 254 N. W. 529. There, as in the instant case, the testatrix, being aged and infirm, was aided in the making of her mark. The evidence indicated that the testatrix touched the pen while the scrivener made her mark. Since no express direction to do so had been given by the testatrix, the question before the court was ". . . whether the touching of the pen by testatrix, as the scrivener made the mark, was a sufficient participation in the act to warrant a holding that the mark was that of the testatrix and not the scrivener. . . ." *Will of Wilcox, supra,* at page 343.

In resolving this question, the court stated, at page 343:

". . . It is our conclusion that such an execution satisfies the statute; that such a participation in the making of the mark, makes the act that of the testatrix. It furnished *objective evidence of assent,* and doubtless represented as much participation in the act as testatrix was physically capable of." (Emphasis supplied.)

There is considerable disagreement as to whether Mrs. Komarr's participation in the making of the mark was sufficient to render it her act, rather than that of the scrivener. As to the testatrix's participation, there is conflict between the testimony of Joseph and Benedetta Balistrieri. While Joseph testified the testatrix had held the pen and he had put his hand on hers, Benedetta testified that Joseph had held the pen and the testatrix had placed her hand on his.

The trial court apparently accepted Joseph's version of the execution and applied the rule laid down in the *Will of Wilcox, supra.* In so doing, the trial court stated:

"The rule laid down in the *Will of Wilcox,* 215 Wis. 341, must be recognized, and the participation of Mrs. Komarr in the making of the mark is here found to be sufficient

238

to make it the act of the testatrix. It was the *objective evidence of her assent* and, considering her physical condition on that date, it was about as much participation in the act as the testatrix was physically capable of rendering. It is a sufficient satisfaction of the statutory requirement." (Emphasis supplied.)

We agree with the trial court that, despite the inconsistent testimony of Joseph and Benedetta Balistrieri, there is sufficient evidence to establish compliance with the rule laid down in *Will of Wilcox, supra.* However, it is our considered opinion that such rule allows too great an opportunity for fraud and should thus be overruled.

We think that where one fails or is unable to in any manner expressly authorize another to sign for him, the statute's alternate requisite is not met by simply taking the testator's hand, as an inanimate object, and making his mark or signature. Where one does not expressly authorize another to assist him, such assistant should not be allowed to claim that the use of the testator's hand was voluntary. Under the rule of *Wilcox,* which sanctioned unrequested physical assistance of another, the requirement of sec. 238.06, Stats., could be met even though the testator had so nearly expired as to, in some cases, make it medically questionable whether he was in fact living at the time of the assistance. Because of the helplessness of the testator in such circumstances and the obvious opportunity for complete fraud, our previous decision in *Wilcox* is hereby overruled. Under the statute as we now view it, mere use of the testator's hand when executing the will does not furnish "objective evidence of assent." Direction to assist the testator, like the direction to sign for him, must be actively rather than passively expressed.

We thus conclude that the execution in the instant case does not satisfy the provisions of sec. 238.06, Stats., as we now view them.

## Undue Influence.

This court in recent years has had the responsibility of reviewing challenges of undue influence which resulted from the practice of attorneys making themselves or their relatives beneficiaries under wills which they themselves have drafted. *Estate of Barnes* (1961), 14 Wis. 2d 643, 112 N. W. 2d 142; *Estate of Spenner* (1962), 17 Wis. 2d 645, 117 N. W. 2d 641; *Estate of Perssion* (1963), 20 Wis. 2d 537, 123 N. W. 2d 465. In addition, it has been called upon to consider the imposition of discipline upon attorneys whose conduct caused such challenges or the risk thereof. *State v. Horan* (1963), 21 Wis. 2d 66, 123 N. W. 2d 488; *State v. Eisenberg* (1965), 29 Wis. 2d 233, 138 N. W. 2d 235; *State v. Haberla* (1968), 39 Wis. 2d 334, 159 N. W. 2d 11; and *State v. Collentine* (1968), 39 Wis. 2d 325, 159 N. W. 2d 50.

It has long been held to establish undue influence the contestant must prove: "(1) A person unquestionably subject to undue influence. (2) Opportunity to exercise such influence and effect the wrongful purpose. (3) A disposition to influence unduly for the purpose of procuring improper favor. (4) A result clearly appearing to be the effect of the supposed influence." *Will of Faulks* (1945), 246 Wis. 319, 361, 17 N. W. 2d 423. *See also: Estate of Brehmer* (1969), 41 Wis. 2d 349, 164 N. W. 2d 318, and *Estate of Ritter* (1969), 43 Wis. 2d 507, 168 N. W. 2d 588.

However, in *Will of Cooper* (1965), 28 Wis. 2d 391, 395, 137 N. W. 2d 93, Mr. Chief Justice HALLOWS, citing *Will of Faulks, supra,* also recognized "the confidential relationship between the testator and the beneficiary coupled with 'suspicious circumstances,'" as an independent theory or method of proving undue influence.

In the instant case the trial court, also citing *Faulks, supra,* at page 360, correctly states that the existence of a confidential relationship between the testatrix and the

favored beneficiary does not of itself constitute undue influence but when coupled wth suspicious circumstances may give rise to an inference thereof. In *Faulks* this court indicated such circumstances, although not exhaustive, included activity of the beneficiary in procuring the drafting and execution of the will, as well as any sudden and unexplained change in the attitude of the testator.

The trial court, although noting the testatrix's condition was such as to render her susceptible to undue influence and that Mr. Beaudry had had ample opportunity to influence her, did not find the circumstances surrounding the drafting and execution of the will suspicious and therefore refused to invoke the inference of undue influence.

As early as *Will of Faulks, supra,* this court noted the existence of a fiduciary relationship would cause courts to scrutinize the evidence more closely and weigh it more carefully than it does in other cases. Although more recent decisions, such as *State v. Horan, supra; State v. Eisenberg, supra; State v. Haberla,*[2] *supra;* and *State v. Collentine,*[3] *supra,* involve disciplinary proceedings, they clearly indicate the light in which this court views fiduciary relationships. It is in such light that we view the conduct of Attorney Beaudry.

In refusing to find Attorney Beaudry's conduct suspicious, the trial court noted he had not personally drafted the instrument and was not present at its execution. In response to this refusal the appellant argues that since Mr. Balistrieri had been retained by Mr. Beaudry, it matters little that he himself was not present. Despite this argument, the trial court's decision stated, ". . . There is no evidence to show that [Mr. Beaudry]

---

[2] Decided subsequent to drafting and execution of instrument here involved.

[3] Decided subsequent to drafting and execution of instrument here involved.

instructed Mr. Balistrieri on how to draft this document. . . ."

The above statement is indicative of a failure to sufficiently consider this court's repeated pronouncement that because acts of undue influence are usually done in secret, proof thereof must be based upon circumstantial evidence. *Estate of Phillips* (1961), 15 Wis. 2d 226, 231, 112 N. W. 2d 591. Obviously, if a beneficiary has either instructed the draftsman as to the contents of the will or has unduly influenced the testator as to the disposition of his property, he would not testify that he had done so.

Viewed with the scrutiny which this court has previously recommended, we think the haste with which the document was drafted, the obviously weakened condition of the testatrix and the failure to contact the testatrix's only son and sole heir of her hospitalization constitute suspicious circumstances, which, when coupled with Attorney Beaudry's fiduciary capacity, create an inference of undue influence.

Since such inference establishes a prima facie case and remains even though evidence is introduced to rebut it (*Estate of Spenner, supra*, at page 652; *Schlichting v. Schlichting* (1961), 15 Wis. 2d 147, 112 N. W. 2d 149), this court must determine whether the proponent Beaudry has sufficiently gone forward with the evidence.

As stated in *Will of Cooper, supra*, at page 402:

". . . One need not contradict the evidentiary facts giving rise to the inference but may introduce such facts as would permit the rejection of the inference of undue influence. . . ."

In *Estate of Perssion*, this court rejected the inference because of considerable testimony which established the testator as independent, strong willed, stubborn and not susceptible to the influence of the attorney-draftsman or his mother. In the case now before the court the record indicates, and the trial court found, that the testatrix

was in a weakened condition and susceptible to undue influence.

In *Estate of Spenner, supra,* a cousin of the deceased was the attorney who drafted her will. There the attorney-draftsman overcame the inference of undue influence by establishing that the result accomplished by the will produced no special benefit for him as distinguished from other cousins of the deceased.

In the instant case, it is the position of the will's proponent that the inference has been overcome by evidence which indicated that the will was in fact not unnatural. Since the trial court did not invoke the inference of undue influence, its decision did not reach the question of the sufficiency of the proponent's evidence to overcome such inference. This court can therefore consider the sufficiency of such evidence firsthand without applying the standard normally applied on review.

In support of his contention that the will was not unnatural, the proponent Beaudry indicates that the testatrix's son had not lived with her during his childhood and had spent very little time with her during his adult life. In addition, he points to complaints of the testatrix that while her son was acting as guardian she was dissatisfied with his treatment of her, and statements she made at the hearing in which Attorney Beaudry was substituted for her son as conservator.

We think that when the evidence is scrutinized in light of previous decisions of this court concerning fiduciary relationships, such evidence tending to negate the apparent unnaturalness of the instant will is insufficient to overcome the inference of undue influence on the part of Attorney Beaudry.

We conclude the will cannot be admitted to probate as a valid last will and testament of the testatrix Mrs. Komarr.

In view of our holding on the admission of the will to probate, we do not reach the remaining issues.

*By the Court.*—Order reversed and cause remanded with directions to the county court in probate to dismiss the probate proceedings of the last will and testament of Evelyn Komarr, dated March 18, 1968.