163 Wis.2d 387 (1991)
471 N.W.2d 780
IN the MATTER OF the ESTATE OF A. Robert DeTHORNE, Deceased: Marilyn DeTHORNE, Appellant-Cross Respondent,[]
v.
Kitty GIBSON and Lisa Gilbreth, Respondents-Cross Appellants.
No. 90-0936.
Court of Appeals of Wisconsin.
Submitted on briefs February 5, 1991.
Decided May 16, 1991.
*388 For the appellant-cross respondent the cause was submitted on the briefs of P. Scott Hassett of Lawton & Cates, S.C., of Madison.
For the respondents-cross appellants the cause was submitted on the briefs of Paul R. Norman and Richard L. Schmidt of Boardman, Suhr, Curry & Field of Madison.
Before Eich, C.J., Dykman and Sundby, JJ.
DYKMAN, J.
Marilyn DeThorne appeals a trial court order refusing to admit the will of A. Robert DeThorne to probate. The court found that the will was improperly executed because a third party assisted Robert in signing the will. We affirm.

I. BACKGROUND
Robert's first marriage was to Eugenia Patrick. They had two daughters, Kitty and Lisa. Robert divorced Eugenia in 1961. In 1981, Robert executed a will leaving his entire estate to Kitty and Lisa.
In April 1986, Robert met Marilyn and subsequently took up residence at her home. The two visited Kitty in California and Lisa in Oklahoma. In October 1986, Marilyn executed a will leaving Robert a life estate in her *389 house, lake cottage and car. In December 1988, Robert was diagnosed as having hepatoma, a form of cancer. Robert and Marilyn were married on December 31, 1988. Prior to the marriage, they signed a pre-nuptial agreement. From February to April 1989, Robert underwent chemotherapy and radiation treatment. Robert was discharged on May 5, and returned to Marilyn's home, where he did not leave until he was rehospitalized on May 15.
On May 14, Marilyn called her attorney, James Bakken, and requested that he draft a will for Robert, leaving everything to her. Bakken prepared the will and the next day, May 15, came to Marilyn's house. Marilyn had arranged for her friend, Diana Smith, to be present as a witness. Robert was in bed and weak. Marilyn, Bakken and Smith went into Robert's room. Bakken informed Robert that the will left everything to Marilyn. Bakken then placed the will on a magazine and handed it and a pen to Robert. Robert had difficulty grasping the pen and it repeatedly slipped out of his hand. Smith grasped Robert's wrist and the pen and assisted Robert in signing his name. That night, Robert was rehospitalized. He died May 23, 1989.
Kitty and Lisa objected to the probate of Robert's May 15 will, contending: (1) that it was improperly executed; (2) that it was procured by undue influence; and (3) that Robert lacked testamentary capacity. After a trial, the court entered an order that the will not be admitted to probate because it was improperly executed. The trial court also found that Robert had testamentary capacity at the time the will was signed and that the will was not the product of undue influence. Marilyn appeals and Kitty and Lisa cross-appeal.

*390 II. STANDARD OF REVIEW
[1, 2]
The degree to which Smith assisted Robert in signing the will is a question of fact. We will uphold a trial court's factual findings unless clearly erroneous. Sec. 805.17(2), Stats.; Noll v. Dimiceli's, Inc., 115 Wis. 2d 641, 643, 340 N.W.2d 575, 577 (Ct. App. 1983). Whether, given those facts, the will was improperly executed is a question of law which we decide without deference to the trial court's decision. Ball v. District No. 4, Area Bd. of Vocational, Technical & Adult Educ., 117 Wis. 2d 529, 537, 345 N.W.2d 389, 394 (1984).

III. EXECUTION OF THE WILL
Marilyn contends the trial court's factual findings that Smith influenced Robert's signature are clearly erroneous. The trial court found:
Robert ... appeared to attempt to sign the will, but the pen slipped from his hand at least 5 times. Diane Smith then held Robert's hand or wrist to steady it, and he signed the will. The signature was in part produced by the influence of Diane Smith and in part by the efforts of Robert. It is not possible to ascertain the relative contribution of each. Nor is it possible to determine precisely when the influence of Diane Smith began, but it is clear that it was before Robert had completed signing his first name.
....
Robert was not physically able to sign the will without the assistance of Diane Smith. At no time did Robert ever ask Diane Smith or anyone else to assist him to sign the will.
At trial, Bakken testified that Robert's grip was "very weak" and, although he couldn't recollect exactly *391 how many times the pen slipped, he observed that "it could easily have been a half a dozen times." He stated that Smith "was holding on so that she could grip the pen."
Smith testified that, recognizing Robert was having difficulty, she said "I'll help you" and supported his hand and wrist while Robert signed the will. Marilyn acknowledged her deposition testimony where she stated, "Diana Smith helped [Robert] guide the pen."
A documents examiner testified that Robert's signature was "written with some assistance from another writer." She based this conclusion in part on the fact that, in prior signatures, the "T" in DeThorne was shaped with a loop but in the signature on the will the "T" was crossed. See Appendix A. She also noted the difference in the size of some of the letters in past signatures to those in the signature in the will.
[3]
The credibility of a witness is a matter peculiarly within the province of the trier of fact. In re A.M.C., 144 Wis. 2d 621, 636, 424 N.W.2d 707, 713 (1988). Although a second expert testified that it was impossible to determine if the will signature was assisted, the trial court's factual findings will not be upset "where more than one reasonable inference can be drawn from credible evidence." In re Dejmal, 95 Wis. 2d 141, 151, 289 N.W.2d 813, 818 (1980) (citations omitted). We conclude that the trial court's factual findings are not clearly erroneous.
Marilyn contends that the will was properly executed. The formal requirements for valid execution of a will are set out in sec. 853.03, Stats., which provides:
Every will in order to be validly executed must be in writing and executed with the following formalities:

*392 (1) It must be signed (a) by the testator, or (b) in the testator's name by one of the witnesses or some other person at the testator's express direction and in his presence, such a proxy signing either to take place or to be acknowledged by the testator in the presence of the witnesses; and
(2) It must be signed by 2 or more witnesses in the presence of the testator and in the presence of each other.
Relying on Estate of Komarr, 46 Wis. 2d 230, 175 N.W.2d 473 (1970), cert. denied, 401 U.S. 909 (1971), the trial court found that the will was improperly executed. In Komarr, the testatrix was physically unable to write her signature. Id. at 236, 175 N.W.2d at 476. To assist her, a third party held her hand. Id. at 237, 175 N.W.2d at 476-77.[1] The testatrix had not requested assistance. Id. at 236, 175 N.W.2d at 476.
Interpreting the predecessor statute to sec. 853.03, Stats., the court stated:
We agree with the trial court that, despite the inconsistent testimony of Joseph and Benedetta Balistrieri, there is sufficient evidence to establish compliance with the rule laid down in Will of Wilcox, [215 Wis. 341, 254 N.W. 529 (1934)[2]]. However, it is our considered opinion that such rule allows too great *393 an opportunity for fraud and should thus be overruled.
We think that where one fails or is unable to in any manner expressly authorize another to sign for him, the statute's alternative requisite is not met by simply taking the testator's hand, as an inanimate object, and making his mark or signature. Where one does not expressly authorize another to assist him, such assistant should not be allowed to claim that the use of the testator's hand was voluntary.
Komarr, 46 Wis. 2d at 238, 175 N.W.2d at 477.
Marilyn concedes that, during the execution of the will, Robert did not expressly request assistance to sign the document. She maintains, however, that the trial court went too far in determining that "virtually any influence" is barred by Komarr.
We conclude the extent of the Smith's assistance offends Komarr. We therefore do not reach the question of whether any unrequested physical assistance in the signing or marking of a will is impermissible.
[4]
The trial court found that the signature was a product of the influence of both Robert and Smith. The trial court could not ascertain the degree to which each contributed to the signature. The rule in Komarr was adopted because of the "obvious opportunity" for fraud where a testator is physically helpless. Id., 46 Wis. 2d at 238, 175 N.W.2d at 477. Where the actual signature of the testatrix is physically influenced by a third party, the danger of fraud is present. It is not alleviated by the fact that Robert may, in some degree, have also influenced the signature. We conclude the trial court properly refused to admit Robert's May 15 will to probate.[3]
*394 By the Court.Order affirmed.

Appendix A

-3-
Wisconsin, this 15th day of May, 1989.

SUNDBY, J. (dissenting).
Because I conclude that the circuit court incorrectly applied the law to the facts of this will execution case, I dissent.
The circuit court concluded that the assistance provided Robert DeThorne in executing his will vitiated his execution, under Estate of Komarr, 46 Wis. 2d 230, 236-38, 175 N.W.2d 473, 476-77 (1970), cert. denied, 401 U.S. 909 (1971). However, Komarr involved a testatrix who was physically unable to write her signature. The court stated the rule as follows:
We think that where one fails or is unable to in any manner expressly authorize another to sign for him, the statute's alternative requisite [signing] is not met by simply taking the testator's hand, as an inanimate object, and making his mark or signature.
Id. at 238, 175 N.W.2d at 477 (emphasis added).
Here, the circuit court did not find that Robert's hand was "an inanimate object," and the contestants of the will do not make that claim. In Komarr, the court *395 overruled Will of Wilcox, 215 Wis. 341, 254 N.W. 529 (1934). In Wilcox, the testatrix, being aged and infirm, was aided in the making of her mark. The evidence showed that the testatrix merely touched the pen while the scrivener made her mark. The court concluded that the touching of the pen furnished objective evidence of assent and that that assent satisfied the statute. Wilcox, 215 Wis. at 343, 254 N.W. at 530. The Komarr court overruled Wilcox, "[b]ecause of the helplessness of the testator in such circumstances and the obvious opportunity for complete fraud ...." Komarr at 238, 175 N.W.2d at 477.
Here, there is no claim of fraud. Robert's intent to execute his will is undisputed. The circuit court, however, erroneously concluded that the degree of assistance given to Robert in signing his will was impermissible under Komarr. I conclude that in this respect the circuit court made an error of law.
If, however, the circuit court intended to hold that Robert's hand was an inanimate object which did not participate in the execution of his will, that finding is clearly erroneous. One of the witnesses to the execution of Robert's will was James Bakken, the attorney who drafted the will. He testified as follows:
When I came into the room he [DeThorne] was basically flat on his back or maybe a few pillows were under him. And Mrs. DeThorne and Mrs. Smith [the other witness] assisted Bob in sitting up and propped some cushions, pillows, behind his back so that he could sit up. And got as I recall a magazine or two to put on his knees, and the will was on the magazines so there was something firm to sign against. And then I handed Bob DeThorne my pen for signing it.

Bob's grip was very weak; the pen slid out of his hand a number of times. So in the course of signing *396 it, he'd hold it and ... appear to sign, but the pen would slip from his hand ....
Mrs. Smith then took hold of his wrist to steady his hand and probably to help keep a grip on the pen. And at that point, then Bob did sign the will. [Emphasis added.]
Bakken's testimony is particularly important in two respects. First, he handed DeThorne his pen. It was not necessary for Bakken to place his pen in DeThorne's hand. DeThorne's acceptance of the pen was voluntary and was done for the express purpose of signing his will. Second, Bakken was an attorney who presumably knew the law respecting execution of wills. He did not express any concern that DeThorne was not executing his will properly.
Diana Smith, a friend of the DeThornes and a nurse, witnessed DeThorne's signature. She provided an uncontradicted explanation for DeThorne's difficulty in signing his will. DeThorne had difficulty sitting up because there was fluid in his peritoneal cavity, which caused distension of his abdomen. She and Mrs. DeThorne attempted to prop him up with pillows. Because the bed had no headboard, it was necessary to prop DeThorne up in the middle of the bed. However, the pillows kept sliding down and did not provide DeThorne with adequate support. At one point he stated, "I don't think I'm going to be able to make it." Smith got several magazines and put the will on it for him to sign. He asked, "Where do I sign?" and Smith indicated where he was to sign. She testified that the pillows started to slide and the pen slid out of DeThorne's hand and was returned to him. She testified: "I think I picked it up and handed it to him and he started to sign again." Then, "things started moving again." She then supported his wrist. She was asked the *397 following questions and gave the following answers as to what happened next:
Q Could you feel his hand as the signature was being made?
A Yes. He was moving his hand.
Q Who was moving his hand?
A Robert was moving his hand. I was providing the support because the magazines were soft and the pillows were sliding. That was all my intention, was to provide the support. He was in a very awkward and uncomfortable position when he made that signature.
There was no reason for the circuit court to disbelieve this testimony and, in fact, the circuit court did not find that this testimony was not credible. Smith's testimony shows that DeThorne's hand was not an inanimate object. He was at least attempting to sign his will.
The majority relies on part of Mrs. DeThorne's deposition testimony where she deposed: "Diana Smith helped him to guide the pen." However, Mrs. DeThorne's complete answer included the following: "He was lying down propped up, not really sitting up too much." Mrs. DeThorne's testimony is not inconsistent with Smith's testimony. Smith did assist DeThorne in signing his willshe supported his wrist. This is a far cry from the Komarr situation where the testatrix's hand was an inanimate object which had no capacity to sign.
The majority relies on the testimony of a document examiner that DeThorne's signature was written with some assistance from another writer. Majority op. at 391. However, the examiner was asked the following question and gave the following answer:

*398 Q Did you form an opinion as to the nature of the assistance which was given? ... THE WITNESS: No.
The director of research and investigation with the Milwaukee Police Department, who had formerly been the chief document examiner for the department, testified that, because of the poor quality of DeThorne's signature, "one could only speculate as to all [the] different inferences on how or what assistance or non-assistance was given."
In fact, the proof that DeThorne executed his will lies in the signature itself. The following is his signature as it appears on his will:

 Robert DeThorne (SEAL)
 A. Robert DeThorne
I conclude that it is inconceivable that anyone could have guided DeThorne's hand in making this signature. This is not the signature of a healthy person with a firm hand. This is the signature of a dying man. However, the fact that DeThorne was so weak that his resulting signature is almost illegible does not make the signature any less his. Because I conclude that DeThorne's signature on his will complies with sec. 853.03, Stats., I respectfully dissent.
NOTES
[] Petition to review denied.
[1] In Komarr, the testimony was contradictory whether the testatrix had held the pen and the third party held her hand or the third party held the pen and the testatrix put her hand on his. Id. at 237, 175 N.W.2d at 476-77.
[2] In Will of Wilcox, the testatrix, physically unable to sign a will, touched a pen with which a third party signed the will. Id. at 342-43, 245 N.W. at 529. The court found that the touching of the pen "was a sufficient participation in the act" to satisfy the statute. Id. at 343, 245 N.W. at 529.
[3] Because we conclude the trial court correctly found that the will was improperly executed, we do not reach the issue, raised on cross-appeal, of whether the trial court erred in finding that the will was not procured by undue influence.